CIACCIO, J.
 
 *
 

 | jThis case concerns a decision of the Board of Commissioners of Orleans Levee District (“OLD”) to fire its chief executive.
 
 [1]
 
 OLD dismissed its longtime employee by resolution after a public hearing on May 21, 1997. Plaintiff Theodore Lange appealed his termination to the Louisiana State Civil Service Commission for the City of New Orleans (“the Commission”), which ultimately ordered him demoted. The decision of the Commission was affirmed by the First Circuit Court of Appeal.
 
 Theodore Lange v. Orleans Levee Dist.,
 
 09-1255 (La.App. 1st Cir.12/23/09); 25 So.3d 252. We granted certiorari to determine the correctness of those decisions, and to determine whether OLD violated plaintiffs constitutional rights.
 
 Theodore Lange v. Orleans Levee Dist.,
 
 10-0140 (La.4/16/10); 31 So.3d 1068. For the reasons that follow, we find plaintiff was afforded a reasonable opportunity to respond to the charges lodged against him, and we therefore conclude OLD did not violate plaintiffs due process rights. Moreover, because we find plaintiff was dismissed for cause, we reinstate OLD’s decision to dismiss him.
 

 J^FACTS AND PROCEDURAL BACKGROUND
 

 OLD hired plaintiff in August of 1973, and he attained permanent status that year.
 
 [2]
 
 Through a series of promotions, he became head of OLD’s accounting department. In 1993, he replaced the retiring managing director, a position plaintiff held until February 14, 1997, when he was suspended pending an investigation by the newly appointed OLD president, James Huey. By a letter dated April 14, 1997, Huey informed plaintiff that OLD proposed to “demote or possibly terminate”
 
 *928
 
 him because OLD had lost confidence in plaintiffs competence and ability to fulfill his duties. The letter enumerated thirteen charges and described their bases in detail. Those charges included:
 

 1. Failing to timely seek abolishment of an assistant director position;
 

 2. Failing to render annual performance ratings for department heads;
 

 3. Rendering inaccurate advice on professional service contracts;
 

 4. Spending funds without authorization;
 

 5. Improperly instructing the president’s secretary to conceal conduct;
 

 6. Failing to hire an internal auditor;
 

 7. Inaccurately representing invoices;
 

 8. Failing to respond timely to grievances;
 

 9. Failing to hold meetings with department heads;
 

 10. Failing to maintain fiscal responsibility;
 

 11. Failing to represent the Board in a positive manner;
 

 12. Failing to insure compliance with bond issuance terms;
 

 13. Threatening department heads with discipline without justification.
 

 The letter also informed plaintiff he could respond in writing or in person at a scheduled OLD meeting. Plaintiff and his retained counsel prepared a detailed written response to the charges, with numerous references to attached exhibits. Plaintiff was given the option of meeting privately with OLD during an executive session, but he chose to respond to the charges during a public meeting on May 21, 1997.
 

 13At the outset of the May 21 meeting, OLD’s counsel announced the agency would allow plaintiff to confer with his attorney but that plaintiffs attorney would not be allowed to address OLD. OLD’s counsel also announced the Board had decided to limit plaintiffs presentation to thirty minutes. Plaintiff began to read from the prepared document, but he did not finish his presentation within the allotted half-hour, and he was forced to end his presentation. In his opening remarks, he portrayed himself as a blameless, faithful public servant whose reward was a politically motivated “witch hunt.” He derided the charges, which he described as “sorry excuses,” and lambasted Huey, whom he claimed had “manufactured” the allegations. Plaintiff eventually responded to six of the thirteen charges, at which time OLD’s counsel notified him that only five minutes remained. Plaintiff skipped ahead to the tenth charge and read his response to it during the time remaining. Once the thirty minutes had expired, Huey called for a motion on a pre-prepared resolution to terminate plaintiff. Plaintiff requested that his entire written response be submitted into the record, and OLD accepted it. Without deliberation, and apparently without reading the documents plaintiff submitted, OLD unanimously passed the resolution, which listed all thirteen charges as grounds for plaintiffs termination.
 
 [3]
 

 Several Board members later testified they perceived plaintiffs remarks as an inappropriate attack on OLD rather than an attempt to defend himself against the allegations. They described his remarks as a “tirade” and a “diatribe about himself’ that was not responsive to the
 
 *929
 
 charges. Several Board members also said plaintiffs attitude and demeanor influenced their decision to terminate him because they determined he displayed poor judgment and a lack of the leadership qualities they |,[believed their chief executive should possess.
 

 Plaintiff appealed his termination to the Commission, which referred the case to a referee for trial. Thus began a protracted procedural odyssey, the details of which are not relevant to our decision today. Of particular significance, however, is the referee’s finding that OLD violated civil service Rule 12.7 because plaintiff “did not get to respond” to all the charges against him during his pre-termination hearing. Civil service Rule 12.7, which governs “pre-removal/pre-discipline procedure,” provides as follows:
 

 No permanent employee may be removed or subjected to any disciplinary action, other than an emergency suspension, until he has been given oral or written notice of the proposed action and the reasons therefor, a description of the evidence supporting the proposed action and a reasonable opportunity to respond thereto.
 

 Because the civil service referee determined OLD had violated this rule, he granted summary disposition to plaintiff on charges 7, 8, 9, 11, 12, and 13, dismissing them. In his written conclusions of law, the referee specifically rejected the notion that plaintiff “did not wisely use his time,” ruling the half-hour allotted for his response was inadequate. The Commission and court of appeal upheld this interpretation of Rule 12.7. The Commission determined that OLD “elected not to hear” plaintiffs response to all the allegations, and therefore found OLD’s action on all the charges improper. The Commission held the referee properly struck the charges to which plaintiff had not responded orally at the hearing, stating OLD’s actions offended “principles of fair treatment and due process.” The court of appeal found it “abundantly clear” Rule 12.7 was violated and that plaintiff “was not given a full opportunity to address the charges alleged against him.”
 

 In his initial July 7, 1999, ruling, the referee found only charge 1 merited cause for disciplinary action, and he ordered plaintiff reinstated to his former position after |sa five-day suspension. OLD appealed the decision, and the Commission remanded the case to the referee. The referee issued another decision March 1, 2002, again finding OLD violated Rule 12.7 and ordering plaintiff reinstated. OLD appealed again, and the case was again remanded. Because the original referee was suffering from poor health, another referee conducted the trial upon remand. The second referee refused to consider the charges dismissed by the original referee. In her November 19, 2008, decision, she found OLD had proved charges 1, 2, 3, and 5; she also found OLD had partially proved charge 6. These incidents “reflect poor judgment and demonstrate [plaintiffs] unfitness to serve as Managing Director,” the referee wrote. “However, taken in context, these incidents are not cause for dismissal of a twenty-three year employee with an unblemished record.”
 

 Notable among the second referee’s conclusions were her findings that OLD “had no basis for determining if the charges were true or not” and did not base plaintiffs termination on the enumerated charges. She found OLD did not fire plaintiff for political reasons; rather, she determined the “primary reason” OLD voted for his dismissal was that OLD Board members no longer wanted plaintiff to serve as their representative “because he handled himself so poorly during his pre-disciplinary hearing.” Although she
 
 *930
 
 found the “proven performance deficiencies adversely affected OLD’s operations and eroded its faith in its Managing Director,” the referee ultimately ordered plaintiff reinstated but demoted to the position of Account Manager 1. She also ordered OLD to pay plaintiff back pay and his attorney’s fees. OLD again appealed, and the Commission upheld the referee’s order on April 8, 2009. The court of appeal affirmed the Commission’s ruling on December 23, 2009.
 
 Lange,
 
 25 So.3d 252. OLD then applied for a supervisory writ from this Court.
 

 |fiLAW AND DISCUSSION
 

 The Louisiana Constitution, like its federal counterpart, provides that no person shall be deprived of property except by due process of law. La. Const, art. I, § 2. As managing director of OLD, plaintiff was a permanent, classified civil service employee, and an employee who has attained such status has a property interest in keeping his job. La. Const, art. X § 8(A);
 
 Murray v. Dep’t of Revenue and Taxation,
 
 504 So.2d 561, 564 (La.App. 1st Cir.1986). Therefore, plaintiff could not be terminated without due process of law. As a threshold matter, we note civil service Rule 12.7 embodies this procedural safeguard. This Court heretofore has not interpreted Rule 12.7, but lower courts have recognized the rule codifies a principle elucidated in
 
 Cleveland Bd. of Education v. Loudermill,
 
 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), i.e. due process entitles an employee threatened with termination to notice of the charges lodged against him, and an opportunity to tell his side of the story before termination.
 
 [4]
 
 Rule 12.7 codifies the
 
 Loudermill
 
 decision, and we analyze this case accordingly.
 

 Plaintiff’s due process rights
 

 The Civil Service Commission has the exclusive authority to decide all cases of employee termination. La. Const, art. X, § 12(A). The Commission’s decision is subject to review on any question of law or fact. La. Const, art. X, § 12(B). In our review of the Commission’s ruling that OLD violated Rule 12.7, we are mindful that due process is by nature an imprecise ideal, the contours of which are often difficult to ascertain. This is so because its requirements vary according to circumstance.
 
 Driscoll v. Stucker,
 
 04-0589 (La.1/19/05); 893 So.2d 32, 43. Due process encompasses the differing rules of fair play which through the years have become 17associated with different types of proceedings.
 
 Id.
 
 We therefore do not aspire to fix the boundaries of due process, which are inherently flexible and must remain so. Our decision today should not be read otherwise. However, due process does not lack fundamental imperatives, one of which is a reasonable opportunity to respond to charges lodged against an individual. It is undisputed that plaintiff received written notice of the charges against him, including a description of the reasons in support thereof. Therefore, the central question in this case is whether the plaintiff was afforded an adequate opportunity to respond to the charges.
 

 Plaintiff received notice of the charges April 14, 1997, and his hearing was held May 21, 1997, which gave him more than thirty days to prepare his response. A pre-termination hearing, though obligatory, need not be elaborate or evidentiary.
 
 Loudermill,
 
 470 U.S. at 545, 105 S.Ct. 1487. The purpose of the hearing is not to determine with certainty
 
 *931
 
 whether termination is appropriate; instead, the hearing should have served as “an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.”
 
 Id.
 
 at 545-546, 105 S.Ct. 1487. When a civil service employee is entitled to a full evidentiary hearing after termination, and retroactive relief such as reinstatement is available, pre-termination due process is satisfied by notice and an opportunity to respond.
 
 Haughton Elevator Div. v. State, Through Div. of Admin.,
 
 367 So.2d 1161, 1165 (La.1979). In other words, only the
 
 barest
 
 of a pre-termination procedure is required when an elaborate post-termination procedure is provided.
 
 Dep’t Pub. Safety and Corr. v. Savoie,
 
 569 So.2d 139, 142 (La. 1st Cir.1990) (emphasis added).
 

 After reviewing the record in this case, we find plaintiffs pre-termination hearing complied with this requirement. The hearing provided OLD with an 1 ^opportunity to determine whether reasonable grounds existed to support plaintiffs charges and termination. Although plaintiff disputed the charges, he did not show they were groundless. Although plaintiff submitted documents in support of his claims, his hearing was not eviden-tiary in nature. Therefore, it is immaterial whether Board members reviewed the documents before voting on his termination. The referee’s conclusion that OLD “had no basis for determining whether the charges were true or not” is inaccurate and reflects a misunderstanding of what process was due plaintiff. The record reflects Board members received copies of the charges, prepared by a law firm, along with documentary support for them before the hearing. Although at least one member acknowledged he did not review the materials beforehand, the majority said they did. The charges and the plaintiffs response to them formed the basis for OLD’s determination that the charges were reasonably grounded in fact, not whether the charges were indisputably true. The pre-termination hearing “need not definitively resolve the propriety of the discharge.”
 
 Loudermill,
 
 470 U.S. at 545, 105 S.Ct. 1487. Rarely would an employer be able to determine the truth of allegations conclusively at a pre-termination hearing, where evidence is not required and may not be available. OLD was not required to resolve the propriety of plaintiffs discharge at his hearing. OLD was required to find reasonable grounds to believe the charges lodged against plaintiff were true, not whether he was guilty of them. The thirteen charges listed above were prepared by a law firm at Huey’s request, and they were supported by documents prepared by OLD staff. In our review of the record, we cannot say OLD lacked reasonable grounds to believe the allegations, and Board members’ testimony reflects their collective belief in the charges. Therefore, the pre-termination hearing served adequately as an
 
 initial
 
 check against a mistaken discharge.
 

 lnWe also disagree with the referee’s conclusion that OLD’s “primary reason” for terminating plaintiff was his demeanor at the pre-termination hearing. The record reflects plaintiffs behavior strongly influenced OLD’s decision, but only two Board members indicated that consideration was predominant, and they testified that other factors informed their decision. We interpret OLD’s consideration of plaintiffs attitude as an appropriate assessment of his credibility as well as the grounds for the charges. Although it is true an employer’s decision to dismiss an employee after a pre-termination hearing must be based on the charges presented, not on the employee’s conduct at the hearing, the two
 
 *932
 
 may be related. For example, an employee’s failure to refute or address a charge may, under some circumstances, be interpreted as an indication of guilt, especially if he appears evasive. To the extent charges bear on an employee’s character, his conduct at the hearing may demonstrate the grounds for that charge. It is apparent OLD voted to terminate plaintiff not solely because of his behavior at the hearing, but because its members perceived certain traits of plaintiff — poor judgment, lack of leadership, incompetence — that to them confirmed reasonable grounds for the charges.
 

 Plaintiff’s opportunity to respond
 

 The issue of whether plaintiff was given a reasonable chance to respond is somewhat complicated by the time limit imposed on his presentation. Although plaintiff argued the time limit was arbitrary, Board members testified it was imposed based on the duration of previous hearings and the unusual circumstance of having the hearing in a public meeting. Sister Kathleen Cain said she understood pre-termination hearings typically lasted 15 to 20 minutes and “thirty minutes seemed reasonable at the time ... We said, ‘Let’s give thirty minutes. We’ve got to have some structure for this to occur.’ Because we wanted to keep this — to be accomplished |inin an orderly fashion.” Huey acknowledged that no time limit had been imposed in a pre-termination hearing held two weeks before plaintiffs, but he cited the different circumstances of that hearing, which was held in his office privately. In other hearings at public meetings, when no time limit was set, “things got out of control,” Huey said. “We didn’t know what to expect.” The time limit was imposed to provide an endpoint to the presentation. It did not limit
 
 what
 
 plaintiff said, only
 
 how long
 
 he would have to say it.
 

 Because plaintiff had not finished when time ran out, OLD did not hear his response to charges 7, 8, 9, 11, 12, or 13. It does not follow, however, that OLD was unable to establish whether reasonable grounds existed to support those charges. As the referee and Commission noted, several of the charges are interrelated, and the basis for one may have provided a basis for another. Charge 10, for example, failure to maintain fiscal responsibility, encompasses the more specific allegations in charges 4, spending funds without authorization, and 6, failing to hire an internal auditor. We find it was reasonable for OLD to conclude the written reasons for the charges and documentary support therefor, coupled with plaintiffs failure to address them, provided a reasonable basis to believe they were true. Although OLD essentially did not hear plaintiffs side of the story on five charges, we fault plaintiff for that shortcoming. He knew when he began speaking to OLD that he had thirty minutes to conclude his presentation. Had he possessed particularly strong arguments to refute the latter charges, he could have abbreviated his response to the former charges. Because he did not address several charges in the time provided, OLD reasonably concluded he was unable to show they were groundless. The law required OLD to provide plaintiff with an opportunity to respond to the charges; the law did not require his response. OLD gave plaintiff thirty minutes to respond, and he used them. I^Except for brief interjections, plaintiff was not interrupted and was permitted to speak as he chose. Rule 12.7 requires an employee such as plaintiff be given a “reasonable opportunity to respond.” The half-hour allotted for plaintiffs response was his opportunity, and we cannot say the time allotted was unreasonable.
 

 
 *933
 
 As an aside, plaintiff contended in briefs and at oral argument that he was taken aback when OLD informed him his attorney would not be allowed to speak for him at the hearing. This allegedly so discombobulated him that he struggled to read his attorney’s notes and failed to present a composed response. We find this argument disingenuous. Before plaintiffs presentation at the hearing, plaintiffs attorney was permitted to advance legal arguments about why he should be allowed to speak for plaintiff, and he referred to a May 8 letter that informed him he would not be permitted to speak for plaintiff. This demonstrates plaintiffs attorney was well aware his client would be required to present his response personally. Moreover, the transcript demonstrates plaintiff read almost verbatim from a prepared document — the same document submitted into the record. Therefore, any lack of preparation by the plaintiff is not for want of notice, in any respect, except the thirty-minute restriction.
 

 Our review of the jurisprudence in this area reveals no decisions on the propriety of limiting an employee’s response time in a pre-termination hearing, and we do not rule on that propriety here. We do not imply a half-hour will be adequate in every hearing; nor do we believe thirty minutes was sufficient time for plaintiff to respond to thirteen charges in detail. However, we reject the notion that plaintiff could not present a cogent and precise
 
 initial
 
 response to each of those thirteen charges within thirty minutes. Skilled and unskilled orators alike routinely compose intricate arguments during narrow windows of allotted time before this Court. Although plaintiff is not a lawyer, one need not be a professional speaker to make | ^several points in a short time. The success of lawyers at oral argument is generally the strength of their advocacy, not their ability to address myriad points in detail. According to the record, OLD set forth the time limit to provide structure to the hearing. A pre-termination hearing must balance the interests at stake: the employee’s interest in keeping his job, the employer’s interest in the “expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination.”
 
 Loudermill,
 
 470 U.S. at 542-543, 105 S.Ct. 1487. We consider plaintiffs interest in keeping his job in light of the substance of his comments. We also consider OLD’s interest in a avoiding disruption and holding an expeditious hearing in public. Given the totality of the circumstances, we find the half-hour limit was a reasonable restriction.
 

 To permit employees open-ended responses at pre-termination hearings, especially at a public meeting, would enable disgruntled workers to launch endless rhetorical attacks and filibuster their own disciplinary proceeding, transforming due process into an opportunity for rambling protest. It undoubtedly would lead to unproductive and unfocused digression. We are guided in this by the principle that a pre-termination hearing must balance the interests at stake. We cannot say OLD failed to balance those interests by affording plaintiff thirty minutes to respond. Several Board members said they would have extended the time allotted for plaintiffs presentation if they had believed it was warranted. However, Board members perceived his remarks as unresponsive, and so they considered an extension of his time unnecessary.
 

 Several Board members said they had “heard enough” within the half hour, testifying they found cause for plaintiffs dismissal in the seven charges he addressed, regardless of the latter six. This was improper because the pre-prepared resolu
 
 *934
 
 tion Imfor which OLD voted, resulting in plaintiffs termination, listed all thirteen charges as the basis for their action. However, this mistake is of no moment because OLD found cause for dismissal among the first seven charges, and we agree that cause existed therein. Regardless of individual Board members’ testimony years after the vote, the resolution and unanimous vote demonstrate OLD terminated plaintiff based on all thirteen charges. As discussed above, OLD found a reasonable basis for all the charges despite the fact that plaintiff did not address each of them directly.
 

 An employee’s opportunity to present reasons why he should not be terminated can be either in person or in writing.
 
 Loudermill,
 
 470 U.S. at 547, 105 S.Ct. 1487. Plaintiff prepared a written response before his pre-termination hearing, then proceeded to read it, as was his right. However, he could have chosen to submit the written response in advance of the hearing, giving OLD ample time to review his response before the matter came to a vote. The fact that plaintiff apparently prepared his document with an eye toward post-termination appeal underscores another aspect of due process.
 
 Loudermill
 
 indicates a pre-termination hearing need not be elaborate when an employee has access to post-termination administrative procedures. Because he was a civil service employee, plaintiff was entitled to administrative and judicial review of OLD’s termination of him. Because he was entitled to a post-termination trial, the law required his pre-termination hearing to be a minimal check against unfairness.
 

 In summary, plaintiff received adequate due process. He was given detailed descriptions of the reasons for the charges against him in writing. He received this notice 36 days before his hearing. He chose to respond in a public meeting, which OLD permitted. Plaintiffs pre-ter-mination hearing was held before a board of directors, giving him the added benefit of multiple votes rather than the singular determination of one person. OLD gave plaintiff thirty minutes to respond, which | Hwas enough time for him to address each charge. However, because he read a series of caustic remarks that did not respond to any specific charge, then responded at length to each, plaintiff did not have enough time to read his full response. We conclude that plaintiffs pre-termination hearing did not violate civil service Rule 12.7. The civil service referee’s conclusion to the contrary was clearly wrong, and the court of appeal erroneously upheld the Commission’s ruling.
 

 Finding of cause for termination
 

 Because charges 7, 8, 9, 11, 12, and 13 were dismissed based on an erroneous interpretation of Rule 12.7, those charges did not factor in the referee’s decision to demote, rather than terminate, plaintiff. Although those charges, if proven, may have led the referee to a different conclusion, we need not consider them here because we find the Commission abused its discretion in deciding the proven charges did not amount to cause for termination.
 

 In determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, a reviewing court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion.
 
 Bannister,
 
 666 So.2d at 647. “Cause” for termination of an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation.
 
 Id.
 
 The following summarizes the second referee’s findings with regard to the charges she determined OLD had proved, i.e. charges 1, 2, 3,
 
 *935
 
 5, and partially 6: When Huey sought plaintiffs help in abolishing the assistant managing director position, plaintiff gave incorrect information and failed to tell Huey what he wanted could not be accomplished; plaintiff gave incorrect advice to Huey about approving professional services contracts, causing Huey to approve them illegally; plaintiff failed to rate two department heads for two years; plaintiff prepared | ^uncooperative, undiplomatic responses to the Legislative Auditor; and plaintiff instructed Huey’s secretary not to tell anyone he had asked her for a copy of a federal subpoena. After determining these charges had merit, the referee concluded these incidents demonstrated plaintiffs unfitness to serve as managing director. As she reasoned:
 

 A part-time Board has to be able to rely on its full-time Chief Executive Officer to tell the President when he knows something the President wants cannot be accomplished, to seek formal legal opinions on important legal issues, to provide staff feedback on their performance via service ratings, to refrain from actions that engender distrust, and to correspond diplomatically. However, taken in context, these incidents are not cause for dismissal of a twenty-three year employee with an unblemished record.
 

 We disagree with this conclusion only in the referee’s determination the offenses were not grounds for termination. To hold otherwise ignores the nature of the position plaintiff occupied as chief executive and usurps OLD’s discretion as his appointing authority. According to Article X of OLD’s bylaws, the managing director’s responsibility “shall be to execute the policies and projects of the Board as a prudent administrator.” Although this phrase does not explicitly define the position as having a fiduciary capacity, it suggests the managing director has a fiduciary relationship with OLD. The word “fiduciary,” as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another’s benefit in matters connected with such undertaking.
 
 Scheffler v. Adams,
 
 2006-1774 (La.2/22/07); 950 So.2d 641, 647. The Uniform Fiduciaries Law, which appears in the Civil Law Aneillaries under Code Title XV — Of Mandate, defines fiduciary as including an officer of a public corporation. The defining characteristic of a fiduciary | lf,relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor.
 
 Id.
 
 As OLD’s managing director, plaintiffs employment by Huey and OLD was a special relationship of confidence. The aforementioned offenses demonstrate plaintiff violated that confidence to a degree from which OLD reasonably could determine not only that plaintiff was unfit to serve as managing director but was unfit to serve in any position.
 

 According to the referee, OLD proved charge 5, which involved plaintiffs attempt to conceal a request he made of Huey’s secretary. On February 6, 1997, a federal grand jury subpoena was delivered to Huey’s office. The subpoena was addressed to “any authorized representative” of OLD, but plaintiff was not authorized to accept for OLD. The president’s secretary contacted Huey, who authorized her to accept on his behalf. Plaintiff asked the secretary to give him a copy of the subpoena but not to inform Huey that he requested the copy. The secretary in
 
 *936
 
 formed Huey of the request, and the president instructed her to give plaintiff a copy. The record does not reveal plaintiffs motive in seeking to conceal his interest in the subpoena, but it ultimately is immaterial. Whether it was nefarious or not, plaintiffs conduct reveals a troubling lack of candor. Although this charge alone may not be a terminable offense, it was a serious infraction because it demonstrated a breach of fiduciary duty. Considered in connection with plaintiffs inaccurate advice both on renewing contracts and abolishing the assistant managing director position; his failure to provide performance reviews; and his disrespectful letters to the Legislative Auditor, plaintiffs conduct was prejudicial to the public service involved and detrimental to its efficient operation. Therefore, the totality of the offenses leads us to conclude OLD terminated plaintiff for cause.
 

 117Curiously, although the referee found all these violations proven, she determined they were not cause for dismissal of a 23-year employee with a clean record when “taken in context.” Although longtime employment and lack of prior discipline may be mitigating factors in the determination of an employee’s punishment, plaintiffs unblemished history with OLD is overshadowed by the gravity of the charges against him and the distrust they engendered. That eroded confidence is the proper context in which to consider these charges. This Court and other reviewing courts should not second-guess an appointing authority’s decisions; they should intervene only when decisions are arbitrary and capricious or characterized by an abuse of discretion.
 
 See Bannister v. Dep’t of Streets,
 
 95-0404 at 8 (La.1/16/96); 666 So.2d 641, 647. Neither should the New Orleans Civil Service Commission serve as a de facto pardon board of an appointing authority’s discipline. Termination of a longtime employee may be harsh, but sympathy is not a legal standard. The referee found OLD proved several of its charges, and those charges provided a rational basis for concluding the imposition of the sanction of termination was not arbitrary and capricious. Consequently, we pretermit discussion of the allegations the referee did not consider, viz. charges 7, 8, 9,11,12, and 13. Because we find OLD had cause for plaintiffs termination, consideration of additional grounds is unnecessary.
 

 CONCLUSION
 

 Because OLD provided plaintiff with notice of the charges against him, detailed reasons for the charges, and a reasonable opportunity to respond to them, the Commission’s finding that OLD violated civil service Rule 12.7 — and, by extension, plaintiffs due process rights — was erroneous. Because OLD terminated plaintiff for cause, the Commission’s decision to reinstate him was an abuse of discretion. The | ^decisions of the Commission and the court of appeal are hereby reversed.
 

 REVERSED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . The plaintiff's title at the time of his termination was managing director, but it is undisputed that the employee in this position served as the Board’s foremost officer.
 

 [2]
 

 . A civil service employee who has gained permanent status cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. Art. X § 8(A).
 

 [3]
 

 . Voting for the resolution were OLD Commissioners Robert Smith Lupo; Patricia Harris; Sister Kathleen Cain; Ellen Hazeur-Dis-tance; James Livingston; Marlin Gusman; and President James Huey. Commissioner Victor Landry was not present at the meeting, but later testified that he probably would have voted for plaintiff's dismissal.
 

 [4]
 

 .
 
 See, e.g., Danna v. Dep’t of Transp. and Dev.,
 
 2008-1275 (La.App. 1 Cir. 2/13/09); 2009 WL 385581 (unpublished).