PAUL A. BONIN, Judge.
BChinh Nguyen, a sergeant in the New Orleans Police Department, appeals the decision of the New Orleans Civil Service Commission which upheld the discipline imposed upon by him by the NOPD. The NOPD issued a formal Letter of Reprimand[1] because on September 16, 2009, Mr. Nguyen, as a platoon commander, failed to perform a “daily lock” and a certification of the Beat Book, which is a part of the payroll system. Mr. Nguyen agreed that he did not perform his prescribed duty on that date, but explained why he felt excused on that single occasion. He primarily argues on appeal that the Commission’s decision is arbitrary and capricious because there is no substantial evidence to support the requisite finding that his failure to perform his duty impaired the efficiency and orderly administration of the public service.
Because we find from our review of the record that there is no evidence to support a finding that Mr. Nguyen’s lack of performance on that one occasion impaired the efficiency of the service, and moreover find that there is evidence that lathe service was not impaired, we conclude that the Commission’s decision is arbitrary, capricious, and unreasonable. We reverse. We explain our decision in greater detail below.
I
In this Part we present background facts and the procedural history of this matter.
The NOPD hired Mr. Nguyen in 1998, and he was promoted to his current class as sergeant in 2007. On September 16, 2009, Mr. Nguyen was a supervisor, along with Sgt. Berger. The shift started at 7:00 a.m. and ended at 7:00 p.m. One of the responsibilities of a supervisor is to lock the payroll system. According to the rules of the NOPD, the payroll is to be locked during the last hour of duty.
The NOPD issued a disciplinary letter, finding that Mr. Nguyen failed to lock the payroll system on September 16, 2009. As a result of the violation, the NOPD imposed the penalty of a letter of reprimand.
Mr. Nguyen filed an appeal with the Commission, seeking a reversal of the penalty imposed by the NOPD. The Commission appointed a referee to take testimony. At the hearing, the NOPD called Mr. Nguyen to testify. Mr. Nguyen agreed that he was on duty on September 16, 2009, and that he did not lock the payroll system during the last hour of duty. Mr. Nguyen stated that the payroll system was not locked until the next morning, around 6:40 a.m.
Mr. Nguyen testified that he was on his way to the station to lock the payroll system and perform other administrative duties when he learned that some of the task force units were involved, in a vehicle/foot pursuit. No other supervisor responded, so Mr. Nguyen reversed course *942 away from the station and headed to the scene of the pursuit. Mr. Nguyen explained that this was a “hot” scene, meaning |sthat officers could be injured, suspects were involved, and public safety was an issue. He went to the scene to maintain control and to be on hand in the event the K-9 unit was needed to conduct a search as only a supervisor can request a K-9 unit. Once on the scene, Mr. Nguyen requested a K-9 unit.
While waiting for the K-9 unit, Mr. Nguyen was contacted by another officer, who reported that she was responding to a traffic stop. In spite of the dispatcher’s requesting that the officer provide a Code Four, meaning that everything was safe and secure in relation to the traffic stop, the officer did not give a Code Four. Concerned for that officer’s safety, Mr. Nguyen proceeded to the scene of the traffic stop. His daily activity sheet noted that he proceeded to the scene of the traffic stop at 6:41 p.m. and that he ensured her safety and completed that activity at 6:56 p.m.
Then Mr. Nguyen returned to the scene of the vehicle/foot pursuit to ensure that everything was under control. His daily activity sheet noted that Mr. Nguyen arrived back at the hot scene at 7:00 p.m. and left at 7:15 p.m. to return to the station. As he returned to the station, Mr. Nguyen, a recently diagnosed diabetic, began to feel ill. That is when he left the station without locking the payroll system. Because Mr. Nguyen’s supervisor was not working that day, he did not contact his supervisor regarding the unlocked payroll system or contact anyone else. The next morning, Mr. Nguyen locked the payroll for the previous day’s shift.
The payroll is locked after each shift and is also locked weekly. After the daily payroll is locked following the end of a shift, a supervisor may unlock it to make changes before the weekly payroll lock. Further, prior to 6:00 a.m. on the day of payroll, the unit commander is to review the unit’s daily records to insure |4that all daily records are locked. After the unit commander insures that all of the daily records are locked, then the weekly payroll lock is performed. Even after the weekly payroll lock is performed, changes may still be made, but they must be made in writing. In order for the officers to get paid, the daily and weekly payroll locks must be completed. Mr. Nguyen did not believe any harm would be caused as a result of the daily payroll lock’s being performed late. No one complained about not getting paid as a result of his delay in performing the payroll lock for the September 16, 2009 shift.[2]
Mr. Nguyen has never before been the subject of discipline by the NOPD.
Sgt. Kevin Imbraguglio conducted the investigation of Mr. Nguyen. As part of his investigation, Sgt. Imbraguglio interviewed Mr. Nguyen. Sgt. Imbraguglio testified before the Commission’s hearing officer that his superiors wanted him to write-up the violation based on the rule in the book. Based on his own experience, had the penalty decision been his to make, he would have issued only a letter of counsel to Mr. Nguyen and not a letter of reprimand. The Commission seemed to agree: “[wjhile informal counseling seems appropriate, considering the Appellant’s (Sgt. Nguyen) special circumstances, we cannot say that the Appointing Authority abused its discretion by issuing a letter of reprimand.”
*943 According to Sgt. Imbraguglio, because Mr. Nguyen had not returned to the station before the end of the shift at 7:00 p.m. to perform the payroll lock, a technical violation occurred. The onset of Mr. Nguyen’s illness would not have mattered.
|sBut despite the technical violation by Mr. Nguyen, Sgt. Imbraguglio importantly testified that the payroll which covered the September 16, 2009 shift went smoothly. Sgt. Imbraguglio also noted that if someone else of a rank higher than Mr. Nguyen were available, that individual could lock the payroll system at the end of a shift. But, as Sgt. Imbraguglio explained, the NOPD is short of supervisors. Consequently, Sgt. Imbraguglio stated that as a result of the shortage, it is not uncommon for the supervisors to be out working, supervising scenes, at the end of the shift if things are hectic.
The referee prepared a report for the Commission. The Commission rendered a decision denying the appeal by Mr. Nguyen.
II
We turn now to address the precepts which control our appellate review of Mr. Nguyen’s appeal of the Commission’s decision to uphold the appointing authority’s disciplinary action. “No person who has gained permanent status in the classified ... city service shall be subjected to disciplinary action except for cause expressed in writing.” La. Const, art. X, § 8(A); La. Const, art. X, § 1(B). New Orleans police officers are included in the protection guaranteed by this provision. Walters v. Dep’t of Police of New Orleans, 454 So.2d 106, 112 (La.1984).
“Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). The employee’s failure to perform the task must “affect the efficient operation of public service.” Fisher v. Dept. of Health and Human Resources, Office of Human Devp., 517 So.2d 318, 321 (La.App. 1st Cir.1987). Thus, “[t]he appointing authority must prove by a | (¡preponderance of the evidence the occurrence of the complained of activity and that the conduct impaired the efficient operation of the public service. Newman v. Dep’t of Fire, 425 So.2d 753, 754 (La.1983); Cittadino, 558 So.2d at 1315.” Barquet v. Dep’t of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993) (emphasis added). See also Cure v. Dep’t of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dep’t of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767.
Mr. Nguyen timely exercised his constitutional right to an appeal from the appointing authority’s disciplinary action to the New Orleans Civil Service Commission. La. Const. ART. X, § 8(A). The Commission has “the exclusive power and authority to hear and decide all removal and disciplinary cases ...” La. Const, art. X, § 12(B); Pope v. New Orleans Police Dep’t, 04-1888 (La.App. 4 Cir. 4/20/05), 903 So.2d 1. Before the Commission, “the burden of proof on appeal, as to the facts, shall be on the appointing authority.” La. Const, art. X, § 8(A) (emphasis added); Walters, 454 So.2d at 112-13.
The Commission’s duty is to decide independently from the facts presented to it whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the infraction. Walters, 454 So.2d at 113-14. Although the Commission’s function is to effectuate the constitutional safeguards and protections for civil servants in the *944 classified public service, equally important, according to the Louisiana Supreme Court, is “the appointing authority’s duty to undertake disciplinary action against an employee for legal cause that impairs the efficiency of the public service.” Mathieu v. New Orleans Public Library, 09-2746, p. 5 (La.10/19/10), 50 So.3d 1259, 1262.
|7The Commission assigned the appeal to its referee: “[The Commission] may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses.” La. Const. Art. X, § 12(B). After hearing testimony and considering other evidence, the referee issued a written report. Other than the eviden-tiary proceeding before its referee, the Commission did not conduct any further evidentiary hearings. The Commission’s ruling states that at least three of the five Commissioners reviewed the evidentiary record and concurred in the denial of Mr. Nguyen’s appeal.
The Commission’s decision is subject to appellate review on any question of law or fact, determining if its order was arbitrary, capricious, or characterized by an abuse of discretion. La. Const. Art. X, § 12(B); Barquet, 620 So.2d at 505; Cure, 07-0166, p. 2, 964 So.2d at 1095; Walters, 454 So.2d at 114. When there is no rational basis for the Civil Service Commission’s action, its decision is arbitrary and capricious. Bannister v. Dep’t of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The judicial review function in a matter appealed from a civil service commission is “multifaceted.” Walters, 454 So.2d at 113-14. We review the Commission’s procedural decisions and interpretations of law under our traditional plenary function of insuring procedural rectitude and reviewing questions of law de novo. Id. But, because of the constitutional implications arising from the distinct functions of the Commission and of us as a reviewing court, we are more circumspect in our review of other aspects of the Commission’s decision. Id. Thus, in reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. Id.
 | ^Specifically with respect to the issues raised by Mr. Nguyen in this appeal, “[i]n judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion.” Id. In practice, we afford great deference to the Commission’s ruling supporting the decision of the appointing authority. See Serignet v. Dep’t of Health, 08-0469, p. 10 (La.App. 4 Cir. 5/20/09), 15 So.3d 1019, 1025. As we are recently reminded by the Louisiana Supreme Court, neither the Commission nor a reviewing court should “second-guess” an appointing authority’s decisions. See Lange v. Orleans Levee District, 10-0140, p. 17 (La.11/30/10), 56 So.3d 925, 936. The Commission and a reviewing court may intervene only when the appointing authority’s decisions are arbitrary and capricious or characterized by an abuse of discretion. Id. Moreover, neither the Commission nor the reviewing court may serve as a de facto pardon board. Id. “[S]ympathy is not a legal standard.” Id.
Ill
In this Part we apply these precepts to the Commission’s decision, which, as we have noted, fully upheld the appointing authority’s imposition of discipline when it found that there was legal cause for the discipline and that the Letter of Reprimand was not arbitrarily excessive. The *945 fact of Mr. Nguyen’s failure to lock the payroll beat book is not disputed. There is no doubt that the departmental policies were technically violated. The appointing authority directed that the specific discipline be imposed irrespective of whether it proved the technical violation impaired the efficiency of the public service in which Mr. Nguyen was 1 ^engaged. See Newman, 425 So.2d at 754; Cornelius v. Dep’t of Police, 07-1257, p. 6 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724; Cittadino, 558 So.2d at 1315.
The NOPD argues that Mr. Nguyen allowed for the possibility of inaccurate reporting of employees’ shift hours by not locking the payroll system at the end of the shift. The NOPD further argues that Mr. Nguyen’s failure to follow the rules of the NOPD impaired the efficiency of the NOPD and served to prejudice the public service. Thus, the NOPD concludes that there is a real and substantial relation between the conduct of Mr. Nguyen and the efficient operation of the NOPD.
But the NOPD offers no resolution for Mr. Nguyen’s dilemma. As a supervisor, he was to perform administrative duties, such as locking the payroll system, and at the same time he was to be available to assess situations such as the “hot” vehiele/foot pursuit to determine if a K-9 unit needed to be requested. Because of the failure of any other supervisor to respond to the scene of the pursuit or the unavailability of any other supervisor, Mr. Nguyen proceeded to the hot scene. Had Mr. Nguyen proceeded to the station to perform his administrative tasks and not proceeded to the hot scene, he would have been in violation of a far more serious neglect of duty involving public safety, the primary mission of the police department.
Under such circumstances we discern no evidence whatsoever that Mr. Nguyen’s technical “dereliction” bore a real and substantial relationship to the efficient operation of the NOPD. He locked the payroll system the following morning, and there was no interference with the timing of the weekly lock of the payroll system. Both Mr. Nguyen and Sgt. Imbraguglio testified that there was no | inevidence that the failure of the payroll system to be locked at the end of the shift on September 16, 2009, caused any problems with the payroll.
As the Commission intimated, but for the overly deferential view it took of the appointing authority’s discipline in this case, the technical violation hardly justified discipline. There is simply no evidence that the public service was impaired by Mr. Nguyen’s actions near and during the ending of the shift. Because there is no evidence from the uncontradicted testimony of both Mr. Nguyen and Sgt. Imbra-guglio to show that the violations bear any real and substantial relationship to the efficient operation of the appointing authority, we conclude that there is no rational basis in fact for the Commission’s decision; the decision is arbitrary and capricious.
Because we find that the NOPD presented no evidence of any impairment to the efficient operation of the NOPD as a result of Mr. Nguyen’s actions, we reverse the Commission.[3]
DECREE
We reverse the decision of the New Orleans Civil Service Commission dated February 18, 2011, in which it upheld the police superintendent’s issuance of the *946 Letter of Reprimand of Chinh Nguyen. The superintendent is directed to permanently remove the Letter of Reprimand from Sergeant Nguyen’s personnel record.
REVERSED.
ARMSTRONG, C.J., concurs.

. We observe that Rule IX, Section 1, Paragraph 1.1 of the City Service Rules, which itemizes disciplinary measures and which is cited in the appointing authority’s disciplinary charging notification and in the appointing authority’s written imposition of the discipline, does not include the issuance of a Letter of Reprimand as a disciplinary action which is warranted. But Mr. Nguyen has not raised this as an assignment of error.

. Another supervisor, Sgt. Berger, could also have locked the payroll but did not. Mr. Nguyen assumed that he was disciplined, and not Sgt. Berger, because he was the last one to return to the station.

. Mr. Nguyen also argues that the Commission acted arbitrarily and capriciously in denying his appeal by finding the discipline imposed to be commensurate with the alleged violation. Considering our conclusion, however, we pretermit discussion of that assignment of error.