THERIOT, J.
|2The plaintiff-appellant, Alicia Moore, seeks reversal of the Nineteenth Judicial District Court’s judgment to affirm the termination of her employment with the Baton Rouge Police Department (BRPD). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Ms. Moore was hired by BRPD on December 15, 1997. At the time of her termination, she was employed full-time as a Police Criminal Information Specialist II.[1] Prior to the incident for which Ms. Moore was terminated, she had never been disciplined during her employment with BRPD.
On November 18, 2011, Ms. Moore was suspended from duty pending a pre-termi-nation hearing after BRPD found: 1) she improperly contacted the crime information unit (CIU) on August 21, 2011 to inquire about a traffic stop of Lafanery Reado, a convicted felon; 2) contacted a police officer to inquire about the traffic stop; and 3) went to the scene of the stop and spoke with one of the officers on the scene about the stop. In its pre-termi-nation memorandum, BRPD also alleged to have found an open text message from Ms. Moore to Mr. Reado where she instructed him not to consent to the police officers searching his vehicle during the stop.
BRPD’s memorandum claimed Ms. Moore took an active interest in Mr. Rea-do’s traffic stop because she and Mr. Rea-do were having an intimate relationship, even though she was aware that he was a convicted felon. Ms. Moore denied such a relationship with Mr. Reado, claiming that he was Dsimply her yard worker, and they had become friends after learning they were related to one another. Ms. Moore also claimed she had no knowledge of Mr. Reado’s felony conviction until the week of the traffic stop. She states in her petition that Mr. Reado had received a pardon for his conviction. Following the traffic stop, Ms. Moore claimed she had cut all personal ties with Mr. Reado.
BRPD charged Ms. Moore with conduct unbecoming of an officer, association with known criminals, and lack of truthfulness.[2] *587 In its interdepartmental correspondence with Ms. Moore, BRPD advised her that on August 21, 2011, police officers had stopped Mr. Reado in his vehicle after observing an equipment violation. Mr. Reado then claimed that he had just left Ms. Moore’s residence, and that he had apparently been speaking to Ms. Moore on his cell phone when he was stopped. Mr. Reado was unable to produce proof of insurance or registration for the vehicle, so the vehicle was towed to police headquarters. During an inventory search, a loaded .22 caliber revolver was found, along with a small bag containing suspected crack cocaine. Mr. Reado was charged with possession of CDS Schedule II and possession of a firearm.
|4BRPD claimed that once Ms. Moore learned of the traffic stop, she first contacted CIU to inquire if any information on Mr. Reado had been run, then contacted various police officers to inquire about the traffic stop, then went to the scene of the stop to speak with officers on the scene. While Mr. Reado was being transported to East Baton Rouge Parish Prison, he asked officers to retrieve two numbers from his mobile phone. As one officer complied with Mr. Reado’s request, he noticed an open text message reading “Do not let them search,” the time of the receipt of the message being when Mr. Reado was stopped. Mr. Reado did in fact deny consent to a search of his vehicle at the scene of the traffic stop. The contact name of the sender of the message was “50,” later determined to be Ms. Moore.
Mr. Reado’s criminal history showed he was convicted of second degree battery in 1999. BRPD concluded from all the text messages found on Mr. Reado’s mobile phone exchanged between him and Ms. Moore that they were engaged in an intimate relationship where she was aware that he was a convicted felon, but nevertheless associated with him on a continuing social basis.
Ms. Moore’s pre-termination hearing was held November 21, 2011. Ms. Moore claimed she was not allowed to adequately defend herself at the hearing, where she was often referred to by the Police Chief and other officers as a “traitor” and “Judas.” On November 30, 2011, BRPD notified Ms. Moore that her employment had been terminated, effective December 1, 2011. She appealed BRPD’s decision, and a hearing was held on May 17, 2012, before the Municipal Fire & Police Civil Service Board (the Board).
In her recorded statement before the Board, Ms. Moore admitted to speaking to Mr. Reado over the phone when he was stopped by the police. She was off duty at the time. As she was driving to run a personal errand, |sshe happened to approach where Mr. Reado had been stopped by eight police cars, which she believed to be an excessive show of force for a routine traffic stop. She stopped a block away from the stop to observe out of view from the stop, and texted “Do not let them search” to Mr. Reado at that time. Ms. Moore attempted to justify her actions with allegations she had heard around her community of police misconduct.
While Ms. Moore denied having an intimate relationship with Mr. Reado, she did state that at times they were flirtatious *588 with their text messages. She admitted texting “I love you” to Mr. Reado, but asserted that the context of the text was platonic and she had no interest in an intimate relationship with Mr. Reado. She claimed to not being aware that Mr. Reado was a convicted felon at the time she had sent those texts. She maintained that at no time did she intervene or interfere with Mr. Reado’s traffic stop, and that it was routine for off-duty officers to call for information on stops and arrests. She claimed to have no knowledge of Mr. Rea-do’s prior felony conviction until the week of the traffic stop, and she presented a copy of Mr. Reado’s first-offender pardon letter from the Louisiana Department of Probation and Parole at the appeal hearing.
The Board unanimously upheld BRPD’s decision to terminate Ms. Moore’s employment. Ms. Moore then appealed the Board’s decision to the 19th JDC. The district court affirmed the Board’s decision on February 27, 2013, and the judgment was signed April 10, 2013. This appeal followed.
ASSIGNMENTS OF ERROR
Ms. Moore alleges three assignments of error:
1. The district court and the Board erred in failing to exclude certain evidence.
j-,2. The district court and the Board committed manifest error when they held that the appointing authority established by a preponderance of the evidence that the alleged dereliction bore a real and substantial relationship to the efficient operation of the appointing authority, and that Ms. Moore was, therefore terminated for “cause.”
3. The district court erred in affirming the decision of the Board and finding that the appointing authority’s actions were not arbitrary and capricious.
STANDARD OF REVIEW
A civil service commission or board must decide not only if a disciplinary action has been made in good faith for cause, but additionally must make an independent assessment of whether the particular punishment imposed is warranted. This duty of the Board interposes a check on BRPD’s ability to impose discipline. See City of Bossier City v. Vernon, 2012-0078 (La.10/16/12), 100 So.3d 301, 311-312.
The Board’s responsibility to undertake an independent review of the evidence, however, is in stark contrast to a reviewing court’s authority in reviewing the Board’s decision. See City of Bossier City at 311. Judicial review of the Board’s adjudication by the district court is authorized by La. R.S. 49:964. In reviewing the Board’s decision, the district court has a multifaceted review function. See Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 113-14 (La.1984). First, deference will be given to the factual conclusions of the Board. Accordingly, in deciding whether to affirm the Board’s factual findings, the district court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. See Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 7So.2d 641, 647. Second, in evaluating the Board’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Board’s order unless it is arbitrary, capricious, or characterized by an abuse of discretion. See Lange v. Orleans Levee District, 2010-0140 (La.11/30/10), 56 So.3d 925, 934. “Arbitrary or capricious” means the absence of a rational basis for the action taken. Bannister, 666 So.2d at 647.
*589 DISCUSSION
Ms. Moore alleges that it was error on the part of the Board and the district court not to exclude specific evidence from the appeal hearing, i.e. a copy of Mr. Rea-do’s text messages. This evidence was admitted over the objection of Ms. Moore’s counsel. Ms. Moore claims that Mr. Rea-do’s cell phone was illegally seized during the arrest and therefore not admissible. Her argument is very similar to what would be found in a motion to suppress evidence in a criminal trial. We do not have to consider this issue of whether or not Mr. Reado’s text messages were admissible, because proof of the text messages comes from two other legitimate sources. When Mr. Reado requested two numbers from his cell phone, a police saw the open text message “Do not let them search” on the phone as he handed it to Mr. Reado. Since the officer testified to seeing the message, the actual admission of the text message is not necessary.
The officer’s testimony is corroborated by Ms. Moore herself, when she admitted in the hearing that she texted “Do not let them search” to Mr. Reado. She also admitted texting “I love you” to Mr. Rea-do, which is suggestive of an intimate relationship. Therefore, even if the Board erred in allowing the text messages as evidence, it was harmless error. Ms. Moore’s first assignment of error is without merit.
|SA permanent classified civil servant employee cannot be disciplined without cause. La. Const, art. 10, § 8. “Cause” sufficient for the imposition of discipline means “conduct that impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged.” Marsellus v. Department of Public Safety and Corrections, 2004-0860, p. 5 (La.App. 1 Cir. 9/28/05), 923 So.2d 656, 660, citing Wopara v. State Employees Group Benefits Program, 2002-2641, p. 3 (La.App. 1 Cir. 7/2/03), 859 So.2d 67, 69. The employee must first receive due process, as the employee has a property interest in maintaining her employment. Lange, 56 So.3d at 930. While there are no specific requirements as to how due process must be carried out, the method must be essentially fair to the employee by adequately giving notice of the appointing authority’s action and an adequate opportunity for the employee to respond. Id.
The cause for which Ms. Moore was disciplined is clear. BRPD sent to Ms. Moore an interdepartmental correspondence dated November 14, 2011, before the pre-termination hearing, in which the allegations were detailed and the sections of the policies and procedures manual which BRPD claimed she violated were listed. Ms. Moore acknowledged receipt of the correspondence by her signature on November 18, 2011. The pre-termination hearing was held on November 21, 2011. While there is no contemporaneous record of that hearing, another interdepartmental correspondence dated November 30, 2011 was sent to Ms. Moore which described the evidence introduced against her.
The correspondence also indicates Ms. Moore was present at the hearing with her attorney and that she was allowed to present any evidence she had in her defense. While Ms. Moore claims in her brief that she was |9unable to adequately defend herself at the hearing while the Police Chief and other officers called her names, she does not dispute that her attorney was present to defend her, and there is no objection by her or by her attorney in the record as to the fairness of the hearing, outside of the objection to the admissibility of the text messages.
*590 We find BRPD’s disciplinary action against Ms. Moore was made for cause, and that it was factually based. Additionally, the Board’s independent review and agreement with BRPD’s assessment and disciplinary action, and the district court’s affirmation of the Board’s decision, were not manifestly erroneous nor arbitrary or capricious, Ms. Moore’s second and third assignments of error are without merit.
CONCLUSION
We find the Board’s affirmation of BRPD’s termination of Ms. Moore’s employment for cause was not arbitrary or capricious or an abuse of discretion. Likewise, the district court’s affirmation of the Board’s action was not manifestly erroneous.
DECREE
The Nineteenth Judicial District Court’s judicial review of the Municipal Fire & Police Civil Service Board’s order to terminate Alicia Moore’s employment with the Baton Rouge Police Department is affirmed. All costs of this appeal are assessed to the appellant, Alicia Moore.
AFFIRMED.
KUHN, J., concurs in result.
HIGGINBOTHAM, J., concurs in the result.

. In her recorded statement before the Municipal Fire & Police Civil Service Board, Ms. Moore described this position as supervisory, where she was tasked with supplying police officers over the radio or telephone with information regarding individuals they contacted while on duty. In BRPD’s interdepartmental correspondence dated November 14, 2011, her position is shown as "Criminal Information Specialist I." In the November 30, 2011 correspondence, her position is shown as "Criminal Information Specialist II.” We shall presume that her title on the November 14, 2011 correspondence contains a typographical error.

. The pertinent disciplinary articles in BRPD’s Policies and Procedures Manual Disciplinary Code, Section XII, are as follows:
0:0 Violators Subject to Disciplinary Action
All members of the Baton Rouge Police Department, regardless of rank or assignment, are subject to disciplinary action for any violation of the rules, procedures or department policy contained herein or in other procedural manuals issued by the Department. It is not necessary the violation be intentional, but may be by omission or failure.
2:10 Conduct Unbecoming an Officer
Every member of the Department, whether on or off duty, in an official or unofficial capacity, must conduct himself at all times in such a manner as to set a good example for all others with whom he may come into contact. He shall in no way, through actions or neglect, bring dishonor or disgrace upon himself or the Baton Rouge Police Department.
3:21 Association with Known Criminals
*587 No member will knowingly associate on a continuing social basis with individuals who have been convicted of any felony without prior written approval of the Chief of Police, or except as part of an authorized investigation.
3:23 Truthfulness
Every member of the Department is required to be truthful except while conducting investigations that require surreptitiousness.