685 So.2d 501 (1996)
Gwendolyn HOLT, Plaintiff-Appellee,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 96-755.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
J. Michael Small, Alexandria, for Gwendolyn Holt.
Kenneth Francis Sills, Baton Rouge, for Rapides Parish School Board.
Before THIBODEAUX, SAUNDERS, and DECUIR, JJ.
*502 DECUIR, Judge.
The Rapides Parish School Board appeals the judgment of the district court reinstating Gwendolyn Holt to her position as a tenured teacher with the Rapides Parish School Board and awarding back pay and allowances Holt would have received had she not been wrongfully terminated, less any income earned, in addition to teacher retirement contributions.
Although the School Board assigns five errors by the district court, these can be summarized as one, i.e. that the district court erred in finding that the School Board did not have a rational basis supported by substantial evidence for its decision to terminate Holt for willful neglect of duty. The standard of review of a school board's action to be applied by this court is whether the board's action is supported by substantial evidence, or is conversely, an arbitrary decision and thus an abuse of discretion. We are mindful that this court must neither substitute its judgment for the judgment of the School Board nor interfere with the Board's bona fide exercise of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976); Spurger v. Rapides Parish School Bd., 628 So.2d 1317 (La.App. 3 Cir. 1993), writs denied, 634 So.2d 397 (La. 1994); Williams v. Concordia Parish School Bd., 95-980 (La.App. 3 Cir.1/31/96); 670 So.2d 351, writs denied, 96-0556 (La.4/19/96); 671 So.2d 921. Based upon our review of the record in its entirety and application of this standard, we affirm the judgment of the district court.
Gwendolyn Holt was a tenured teacher and coach at Oak Hill High School at the time she was charged with willful neglect of duty in failing to maintain an appropriate professional teacher-pupil relationship with a student, Lori Robinson. The charge was based upon eight incidents that Allen Nichols, Superintendent of Rapides Parish Schools, alleged demonstrated the improper teacher-student relationship. After a hearing, the School Board found by majority vote that five of the incidents were proven and by a vote of six to three found Holt guilty of willful neglect of duty. By a vote of five to four the Board removed Holt as a tenured teacher and dismissed her as an employee of the Rapides Parish School Board. Two incidents found to be proven include public demonstrations of the alleged improper relationship; two incidents involve handwritten material in Lori Robinson's notebook; and one involves an incident in Holt's office where Holt and Robinson were allegedly partially disrobed.
Preliminarily, we note that plaintiff and Lori Robinson are related. Holt and Lori's father Mike are cousins, grew up together as children, and double-dated together. Holt and Lori's mother Pat have been friends for many years; Holt served in the Robinsons' wedding. The exchange of birthday and Christmas presents was customary between plaintiff and the Robinsons. Mike Robinson testified that plaintiff babysat his children for three days while his father lay dying in the hospital. The testimony of plaintiff, Mike and Pat Robinson, and Lori Robinson reflect a close family relationship between Holt and the Robinsons. Finally, it is important to note that each of these individuals vehemently denies all of the allegations of impropriety levied against Holt by the Board. That being said, we address first the incidents of public demonstrations of the alleged inappropriate teacher-student relationship between the plaintiff and Lori Robinson.
On Lori's birthday, October 23, 1991, Mike and Pat Robinson took their daughter and three of her basketball team members to a pizza party. After the party, the Robinsons dropped the girls off at plaintiff's home for a slumber party. Three of the girls slept together in a double bed and Lori slept with the plaintiff in her queen sized bed. The evidence reflects that: (1) it was the Robinsons who asked plaintiff if the girls could have a slumber party at her home; (2) plaintiff did not participate in the slumber party; (3) and plaintiff went to bed before the girls and was asleep when Lori came to bed. Furthermore, Lori testified that plaintiff was not even aware that Lori was in bed with her. Only one of the other girls who attended the slumber party testified. Christi Rachal stated that nothing improper occurred, and she did not see anything improper with Lori sleeping with Holt while she herself slept *503 with two other girls. This evidence is uncontroverted, and there is absolutely no evidence that anything improper occurred between Holt and Lori.
The district court correctly noted that other than the admissions of the slumber party event from plaintiff and Lori Robinson, no other evidence was introduced by the Superintendent, thereby "letting the event speak for itself as evidence of an improper teacherstudent relationship." On the other hand, an abundance of evidence was introduced to show the event had nothing to do with a teacher-student relationship, but had to do with a family relationship.
Apparently, another charge of inappropriate teacher-student relationship arose out of the fact that plaintiff presented Lori with birthday gifts. Again, this was explained by the family relationship and the customary practice of exchanging gifts between Holt and the Robinsons. Furthermore, several students testified that it was not unusual for Holt to give them presents.
The second incident involving an alleged improper display of improper teacher-student relationship between Holt and Lori Robinson is based upon Christy Rachal's observation that during the basketball season when plaintiff would drive the school activity bus, Lori would either sit in the front seat or next to the plaintiff on the control panel of the bus. However, Ms. Rachal admitted this did not imply to her any type of improper relationship. Furthermore, nine of Holt's students and players testified on her behalf that she showed no favoritism toward Lori; that Holt spent a lot of time with each of them and was loved and respected by each of them; Holt was not a physical person and they never saw Holt touch anyone in an inappropriate manner; and that Lori did not sit next to Holt on the bus anymore than anyone else. Mothers of three of the students corroborated this testimony. According to these witnesses, rumors ran rampant at the school and through the community not only as to plaintiff's and Lori's sexual orientation, but also as to the sexual orientation of some of these student witnesses and at least one of the mothers.
These two charges against Holt are replete with insinuations and innuendos, but the Board's case is seriously lacking in evidence, much less the "substantial evidence" required to support the Board's actions. The trial judge stated:
The events did happen, but except for some vague inference, they do not substantiate a charge of an unprofessional relationship. Furthermore, the other facts and circumstances of these events make them completely innocuous.
We agree with the trial judge and, thus, find no error in the district court's finding as to these two charges.
We next address the two charges involving handwritten material in Lori's notebook. Superintendent Nichols alleges that Holt wrote three notes to Lori stating: "Lori, I'm the only one you love," and, "Yes," and "I feel you've changed a part of my life, you're the miracle I've been waiting to happen." This allegation was denied by both Lori and Holt. The only other person to testify as to this allegation was Christy Rachal who admitted that she did not know who wrote the first two remarks, and she was "certain" Holt wrote the last remark. However, Ms. Rachal could not remember exactly what the note said. These writings were not made a part of the record; they were not made available for the School Board to review; nor were the writings shown to Holt to afford her the opportunity to admit or deny her handwriting. Furthermore, we note that Lori testified that she has had a boyfriend for approximately one and a half to two years. We must agree with the trial judge's statement that:
Certainly of the three notes alleged, the only evidence is that the first two were not written by the coach. Proof of the third note as being written by Coach Holt is extremely unconvincing. Unless the coach is shown to have some unique, very unique, handwriting, it would be difficult for any nonprofessional, especially a 16 year old student, to testify with any degree of certainty that a note that she saw, though she can no longer remember what it said, was definitely in the coach's handwriting.
*504 The second charge concerning handwritten material involves writing by Lori expressing her love for Holt and written four months after Holt's suspension. The trial judge correctly noted that this notebook had nothing to do with the decision to recommend plaintiff's termination; the note was not written by plaintiff; nor was it ever sent to her; nor was the plaintiff ever aware of the note. The note clearly refers to the upcoming dismissal hearing and reflects Lori's concern for her coach. The testimony from Holt's students and players overwhelmingly reflects that it was not unusual for plaintiff's players to express their love for her. Several of them expressed their love for their coach under oath. In fact, one player, Kristen Howell, wrote to Holt: "I love you and you will always be the number one coach in the world. Remember Coach you are always in my heart and my thoughts every day of my life."
These charges against plaintiff insinuate inappropriate sexual expressions of love between Holt and Lori, but the record reflects a serious lack of evidence, much less "substantial evidence" to support a finding that plaintiff even wrote the purported inappropriate material to Lori or that Lori's note to plaintiff reflects any inappropriate expression of love. Therefore, we conclude that the Board's action regarding these charges is not supported by substantial evidence, but was arbitrary and thus an abuse of discretion.
Lastly, we address the most serious charge that plaintiff and Lori Robinson were seen partially disrobed in plaintiff's office. The only evidence submitted in support of this allegation was the testimony of two young, seventh-grade girls. Jennifer Powers and Catrina Van Asselberg testified that as they were walking past plaintiff's office, they saw, through partially opened blinds, Lori sitting on the plaintiff's desk and plaintiff standing in front of her, both partially disrobed. Interestingly, when questioned by the principal about the incident, both girls twice denied having seen anything. When questioned a third time, the girls did see something. A review of the girls' testimony reveals several important inconsistencies. For example, Powers testified plaintiff did not have a shirt or bra on, while Van Asselberg testified she did; the girls' testimony differed regarding the position of the blinds; and Powers saw them kissing, while VanAsselberg saw them standing arm's length apart looking at each other. Neither of the girls stopped to watch, but continued walking. Both agreed that the incident occurred rapidly. In fact, Powers testified that once plaintiff saw them, she almost immediately (a matter of two seconds) opened her office door, fully clothed, to tell the girls to get out of the hall. Both Lori and plaintiff deny this occurred and no one else who testified believes this event occurred.
We find that the School Board's action in dismissing Ms. Holt was arbitrary and an abuse of discretion. The record reflects that the Board did not have a rational basis supported by "substantial evidence" for its decision to terminate plaintiff for willful neglect of duty.
The judgment of the district court is affirmed. Costs of appeal are assessed to defendant-appellant.
AFFIRMED.