# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **30th day of June, 2015**, are as follows:

**BY GUIDRY, J.**:

2015-CA-0432     KASHA LAPOINTE v. VERMILION PARISH SCHOOL BOARD, ET AL. (Parish of Vermilion)

Accordingly, the declaration of unconstitutionality from the court of appeal is reversed, and the matter is remanded to that court for consideration of the plaintiff's as-applied challenge. REVERSED AND REMANDED.

HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-CA-0432

KASHA LAPOINTE

VERSUS

VERMILION PARISH SCHOOL BOARD, ET AL.

**ON APPEAL
FROM THE COURT OF APPEAL, THIRD CIRCUIT,
PARISH OF VERMILION**

**GUIDRY, Justice**

We are called upon to determine whether the lower court erred in declaring unconstitutional on its face Act 1 of the 2012 Legislative Session as codified in La. Rev. Stat. 17:443(B)(1) and (2). Upon *de novo* review, we find the court of appeal erred in declaring La. Rev. Stat. 17:443 as amended by Act 1 of 2012 unconstitutional on its face because it does not afford a full evidentiary hearing before a neutral adjudicator prior to termination. Instead, we find La. Rev. Stat. 17:443 as amended by Act 1 of 2012 provides sufficient due process to protect the tenured teacher's vested employment rights. This statute provides for one pre-termination opportunity to respond to the charges, and two post-termination hearings. At the first of these post-termination hearings, the teacher may present evidence to build his or her case before a tenure hearing panel, which then makes a recommendation to the superintendent; at the second, she may seek judicial review of the superintendent's decision. If the judge determines the superintendent's decision to terminate or not reinstate the teacher's employment was arbitrary or capricious, the teacher shall be entitled to reinstatement and full back pay. Given

these requirements before and after termination, we find Act 1 of 2012 on its face provided sufficient due process protections to the tenured teacher.

**FACTS and PROCEDURAL HISTORY**

According to her *Petition for Declaratory and Injunctive Relief*, filed in Case No. 98,078 in the 15th Judicial District Court on December 10, 2013, plaintiff, Ms. Kasha LaPointe, was employed at all relevant times as a tenured public school teacher by the defendant Vermilion Parish School Board ("VPSB or the Board").[1] By letter dated August 16, 2013, issued from Mr. Jerome Puyau, the Superintendent of Schools for VPSB, Ms. LaPointe was advised that a "due process hearing" would be held on Tuesday, August 20, 2013, in his office to address charges of alleged "willful neglect of duty" and "dishonesty." According to the *Petition for Declaratory and Injunctive Relief*, this letter, also called the "charge letter" by the parties, advised Ms. LaPointe that she would be "afforded an opportunity to respond" to the allegations but that "[n]o witnesses [would] be heard…."

Because of the short interval of time, the "due process hearing" was postponed until Thursday, August 22, 2013, to allow Ms. LaPointe time to secure legal counsel. According to her petition and her memorandum, at the hearing on

---

[1] Ms. LaPointe filed two suits in the district court, a *Petition for Declaratory and Injunctive Relief*, No. 98,078, raising constitutional due process claims, and a *Petition for Judicial Review Pursuant to LSA-R.S. 17:443(B)(2)*, No. 98,079, seeking judicial review of her termination. These suits were consolidated in the district court; however, there has been no judicial review of Ms. LaPointe's termination as of this date. This appeal concerns only the *Petition for Declaratory and Injunctive Relief*. The record before us does not contain any of the exhibits or transcripts filed in the record below with regard to the *Petition for Judicial Review*, namely the so-called "charge letter" dated August 16, 2013, the termination letter dated September 9, 2013, or the transcript of the proceedings before the tenure hearing panel, including any exhibits filed in evidence during that hearing. Accordingly, the facts summarized herein are primarily gleaned from the *Petition for Declaratory and Injunctive Relief* itself, the plaintiff's hearing memorandum filed in the district court in support of the *Petition for Judicial Review*, and the transcript of the hearing on the *Petition for Declaratory and Injunctive Relief*, as well as the exhibits entered in evidence during that hearing.

Thursday, August 22, 2013, Ms. LaPointe responded to the charges and denied the allegations contained in the August 16, 2013 "charge letter."

Exactly what transpired at this "due process hearing" is not directly ascertainable from the record as it is presently confected, because the record contains only brief excerpts of testimony from the hearing before the tenure panel and the transcript of the hearing on the *Petition for Declaratory and Injunctive Relief*, including testimony of Ms. LaPointe and the arguments of counsel referring to the record in the district court. However, Ms. LaPointe did appear with her counsel in the office of the superintendent and did present, with counsel's assistance, her explanations and responses to the allegations in the "charge letter." Additionally, counsel in argument before the district court referred to a written rebuttal that had been submitted to the superintendent by Ms. LaPointe through her counsel after the meeting with the superintendent. After Ms. LaPointe met with the superintendent and presented her response, the superintendent took the matter under consideration before making his decision to terminate Ms. LaPointe's employment.

According to the petition, that decision was communicated to Ms. LaPointe in a letter dated September 9, 2013. This letter advised Ms. LaPointe that her employment with the VPSB was terminated "effective at the close of business today, September 9, 2013." The letter also advised Ms. LaPointe she had "seven (7) days from the receipt of this letter to apply for a Tenure Review Panel."

In a letter dated September 16, 2013, Ms. LaPointe through her counsel informed the superintendent she was challenging her termination on constitutional grounds as well as requesting a Tenure Hearing Panel. The Tenure Hearing Panel was convened on September 23, 2013, but it disbanded because the hearing panel

determined that it required a hearing officer. On October 8, 2013, the Tenure Hearing Panel reconvened with a hearing officer, Wayne Landry, who indicated having thirty-six years of experience as an attorney with the school board and having served as a hearing officer in other settings, involving both government litigation and personnel matters. The panel itself consisted of three members: Ms. Lynda Guidry, designated by Ms. LaPointe, Ms. Christina Menard, designated by the principal, and Ms. Charlotte Waguespack, designated by the superintendent. Present at the October 8th hearing were the hearing officer, the panel members, Ms. LaPointe and her counsel, the superintendent, and the attorney for the VPSB. The hearing officer and the panel then proceeded to take evidence and hear testimony, all of which was preserved. Thereafter, the panel made its recommendation, voting 2-1 to concur with the superintendent's action to terminate Ms. LaPointe's employment. Ms. LaPointe's designee disagreed with the superintendent's action, and instead recommended suspension without pay for an agreed period of time, counseling, work ethics seminars, and return to a different school if she returned to work after the suspension.

By letter dated October 11, 2013, the superintendent advised Ms. LaPointe he was confirming her "termination that was effective on September 9, 2013," and further advised her that "[p]ursuant to Act 1 of 2012, [she had] sixty (60) days from this date to seek judicial review of [his] decision." Ms. LaPointe timely filed her *Petition for Judicial Review Pursuant to LSA-R.S. 17:443(B)(2)* on December 10, 2013, requesting judicial review of her termination. No judicial review of the termination itself has been conducted at this point, owing to the ongoing constitutional challenge.

As to the constitutional challenge, Ms. LaPointe requested a judicial declaration that Act 1 of 2012 Regular Session of the Louisiana Legislature is unconstitutional in its entirety and further declaring Act 1 to be null, void, and of no legal effect whatsoever. She alleged the hearing provisions of Act 1 deprived her of her vested property right to continued employment without due process of law as required by Amendment XIV of the United States Constitution and Article I, Section 2, and of the Louisiana Constitution of 1974. Because the constitutionality of Act 1 was challenged, the Attorney General later intervened as a defendant in the matter.

After a hearing in March of 2014, the trial court found Act 1 was both facially constitutional and constitutional as applied to the facts of this case and dismissed Ms. LaPointe's claims for declaratory and injunctive relief. The trial court reasoned that Act 1 provided for one pre-termination (pre-deprivation) and two post-termination hearings. The court noted the first hearing is before the superintendent, while the second is before a tenure hearing panel, and the third hearing is before the district court judge. The court noted that, if the deprivation of the teacher's property right is judicially determined to have been unlawful, the plaintiff is made whole. Considering the entirety of the process provided by Act 1, the court could conceive of no possibility of an unconstitutional deprivation of this property right.

The court of appeal reversed and declared Act 1 of 2012 unconstitutional on its face, pretermitting Ms. LaPointe's as-applied claim. We accepted the State's appeal pursuant to our appellate jurisdiction, La. Const. art. V, § 5(D), in order to review the appellate court's declaration. *See World Trade Center v. All Taxpayers*, 05-0374 (La. 6/29/05), 908 So.2d 623.

5

**DISCUSSION**

This court reviews judgments declaring a statute unconstitutional *de novo*. *City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund*, 05-2548 p. 11 (La. 10/1/07), 986 So.2d 1, 12. In general, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. *Id.*

The removal of a teacher is governed by the teacher tenure law, La. Rev. Stat. 17:441 *et seq.*, which is designed to protect the job security of teachers in the best interest of the public school system. *Palone v. Jefferson Parish School Bd.*, 306 So.2d 679, 682 (La. 1975). Act 1 of 2012, effective July 1, 2012, amended and reenacted La. Rev. Stat. 17:443(B) to provide for certain rights and procedures for the removal of a tenured teacher, giving the authority to terminate a tenured teacher's employment to the superintendent of schools. La. Rev. Stat. 17:443 has since been amended by Act 570 of 2014, effective June 9, 2014. However, at the time of the plaintiff's termination from employment, Act 1 of 2012 controlled. As amended by 2012 Act 1, La. Rev. Stat. 17:443(B) then provided in part as follows:

> B. (1) A teacher with tenure shall not be removed from office except upon written and signed charges of poor performance, willful neglect of duty, incompetency, dishonesty, immorality, or of being a member of or contributing to any group, organization, movement, or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if furnished with a copy of such written charges and given the opportunity to respond. The teacher shall have seven days to respond, and such response shall be included in the teacher's personnel file. At the end of this seven-day time period, the superintendent may terminate the teacher's employment. A teacher shall not be terminated for an "ineffective" performance rating until the completion of the grievance procedure established pursuant to R.S. 17:3883(A)(5) if a grievance was timely filed. Within seven days after dismissal, a teacher may request and upon request shall be granted a hearing by a

6

panel composed of a designee of the superintendent, a designee of the principal or the administrative head of the state special school in which the teacher was employed, and a designee of the teacher. In no case shall the superintendent, the principal or state special school administrative head, or teacher designate an immediate family member or any full-time employee of the school system by which the teacher was employed who is under the supervision of the person making the designation. Such hearing may be private or public, at the option of the teacher, and shall begin within seven business days after receipt of the teacher's request for such hearing. The teacher shall have the right to appear before the tenure hearing panel with witnesses on his behalf and with counsel of his selection, all of whom shall be heard by the panel at the hearing. For the purpose of conducting hearings hereunder, the panel shall have the power to issue subpoenas to compel the attendance of all witnesses. Nothing herein contained shall impair the right to seek supervisory review from a court of competent jurisdiction.

(2) The tenure hearing panel shall submit its recommendation to the superintendent, and the superintendent may choose to reinstate the teacher. If the superintendent does not reinstate the teacher, the superintendent shall notify the teacher of his final determination, in writing, and such teacher may, not more than sixty days from the postmarked date of such written notification, petition a court of competent jurisdiction to review whether the action of the superintendent was arbitrary or capricious. The court shall have jurisdiction to affirm or reverse the action of the superintendent in the matter. The record on review shall be limited to evidence presented to the tenure hearing panel, and the court shall review the matter not later than ten days after the petition has been filed. If the action of the superintendent is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he may have sustained by reason of the action of the superintendent.

It is well recognized that the teacher tenure law vests a property right in the teacher. Once property interests are created, they may not be deprived without adequate legal process. *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Franceski v. Plaquemines Parish School Board*, 772 F.2d 197 (5th Cir.1985). The United States Supreme Court has explained that "'[t]he

right to due process is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part)). Although a state may establish certain statutory procedural safeguards to protect property rights, still the safeguards may be judged insufficient (depending on the facts and circumstances of a particular case) to guard the particular property interest at risk. *Id.*

"[T]he central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." *Wilson v. City of New Orleans*, 479 So.2d 891, 894 (La. 1985) (citations omitted). An equal concomitant to this right is "the right to notice and opportunity to be heard," which must be extended at a meaningful time and in a meaningful manner. *Id.* (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

The question before us, now that it has been determined Ms. LaPointe is entitled to due process, is how much process Ms. Lapointe should have been afforded before divestiture of her tenure right and whether La. Rev. Stat. 17:443(B) provides sufficient due process. *See Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). As we explained in *Wilson*, "due process is not a technical concept with a fixed content unrelated to the time, place and circumstances."

*Wilson*, 479 So.2d at 894 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Rather, it requires the implementation of flexible rules that may yield to the demands of the particular situation. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604).

*MOOTNESS*

As a threshold issue, we first consider the State's argument the plaintiff's facial challenge to Act 1 of 2012 was rendered moot by Act 570 of 2014. The State contends the plaintiff ceased to have a legally cognizable interest in obtaining a facial declaration regarding the process set forth in Act 1 the moment it was replaced by Act 570. Once this occurred, the State contends, there was no longer any possibility a teacher would be terminated under the Act 1 version of La. Rev. Stat. 17:443, and, thus, there is no longer a reason for any court to decide whether Act 1 is constitutional on its face.

It is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. In order to avoid deciding abstract, hypothetical or moot questions, courts require cases submitted for adjudication to be justiciable, ripe for decision, and not brought prematurely. *Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193. Further, mootness may result when the challenged statute has been amended and the change corrects or cures the condition complained of, unless an exception to mootness applies. *Cat's Meow*, 98-0601, 720 So.2d at 1194. Here, the procedure for termination of a tenured public school teacher set forth in Act 1 was "dramatically rewritten and replaced by 2014 Acts No. 570." *See Louisiana Federation of Teachers v. State*, 14-961, p. 6 (La. 10/15/14), ___ So.3d ___. However, even though La. Rev. Stat. 17:443 was

9

specifically revised by the legislature in Act 570 of 2014 to change the termination procedures enacted by Section 3 of Act 1 of 2012, and Ms. LaPointe retains her potential remedies of reinstatement and back pay by prosecuting her as-applied claim, this court has previously declined to find mootness for the purposes of a constitutional challenge. In *Louisiana Federation of Teachers*, we stated: "We acknowledge the legislature, through Act 570 of 2014, changed the policy regarding removal and discipline of tenured teachers, which superceded the prior policy set forth in Act 1 of 2012. As the 2014 legislation does not have retroactive effect, however, we agree that there could be situations where a ruling on the constitutionality of Act 1 would have significant effect, even as to the displaced provisions." 14-0691, p. 12, ___ So.3d at ___. Given our previous pronouncement in this regard, we need not address this issue further.

*DUE PROCESS*

We turn next to the appellate court's declaration that Section 3 of Act 1 of 2012 was unconstitutional on its face. A facial constitutional challenge seeks more drastic relief than an as-applied challenge; therefore, the movant in a facial challenge bears an especially heavy burden. *U.S. v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100 (1987). The plaintiff must establish that no set of circumstances exists under which the statute would be valid, that is, that the law is unconstitutional in all its applications. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, 128 S.Ct. 1184, 1190 (2008). In determining whether a law is facially invalid, the court "must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases." *Id.*, 552 U.S. at 450.

The court of appeal first found Act 1 is unconstitutional because it denies a tenured public school teacher adequate due process before he or she is terminated, because only one person, the superintendent, makes the decision to terminate. The court of appeal found there was insufficient due process because the teacher is allowed to oppose the charges brought by the superintendent only after termination when she is allowed to submit her case, including witnesses, to a tenure hearing panel. Thus, the court of appeal essentially held that a full evidentiary hearing before a neutral adjudicator is required before a teacher may be terminated.

While the legislature may so provide, as it did prior to the effective date of Act 1 of 2012, and does so now as the statute is amended by Act 570 of 2014, we do not find the due process guaranteed by our state and federal constitutions requires such a full evidentiary hearing. Due process entitles an employee threatened with termination to notice of the charges lodged against him, and an opportunity to tell his side of the story before termination. *Lange v. Orleans Levee Dist.*, 10-140, p. 6 (La. 1/30/10), 56 So.3d 925, 930 (citing *Loudermill, supra*). We set forth in *Lange* the minimum requirements of a pre-termination hearing:

> The purpose of the hearing is not to determine with certainty whether termination is appropriate; instead, the hearing should have served as "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." When a civil service employee is entitled to a full evidentiary hearing after termination, and retroactive relief such as reinstatement is available, pre-termination due process is satisfied by notice and an opportunity to respond. In other words, only the *barest* of a pre-termination procedure is required when an elaborate post-termination procedure is provided.

*Lange*, 56 So.3d at 930-31 (quoting *Loudermill*, 470 U.S. at 545-46, 105 S.Ct. at 1495)(other citations omitted). The *Loudermill* court explained the principle that an individual be given an opportunity for a hearing before he is deprived of a significant property interest requires "some kind of a hearing" prior to the

discharge of the employee. *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (citations omitted).

The *Loudermill* court, however, declined to define what such a hearing should entail, stating:

> The essential requirements of due process … are notice and the opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted). Furthermore, the *Loudermill* majority clearly rejected the dissenting view that such a hearing must always involve a full evidentiary hearing prior to deprivation of the property right such as civil service employment. *See, e.g., Loudermill*, 470 U.S. at 548, 105 S.Ct. at 1496 (Marshall, J., concurring in part)

Here, La. Rev. Stat. 17:443(B)(1) as amended by Act 1 provided the teacher shall not be removed except upon written and signed charges, and only if she be furnished with a copy of such written charges and be given the opportunity to respond. "The teacher shall have seven days to respond, and such response shall be included in the teacher's personnel file." La. Rev. Stat. 17:443(B)(1). Although the statute does not specify what the response should be, due process requires only that the teacher be given an opportunity to respond. As the *Loudermill* court explained, there need only be some pre-termination opportunity to respond to the charges and for the employee to present his side of the story. In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974),

constitutional requirements were satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits. Because Act 1 requires notice and an opportunity to respond in writing before termination, it provides sufficient opportunity to the tenured teacher to respond to the charges against her. The statute, moreover, does not limit the manner of a teacher's pre-deprivation response, as she may respond in person or in writing, present evidence, and be represented by an attorney. The statute specifically states that any written rebuttal will be made a part of the teacher's personnel file, thus memorializing her response. In *Lange*, we noted that evidence is not required and may not be available at a pre-termination hearing. *Lange,* 56 So.3d at 931. We find the pre-termination process permitted by Act 1 of 2012 is sufficient to give the teacher notice of the charges against her and a meaningful opportunity to respond.

Finally, "[t]he pretermination 'hearing,' though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495. This is especially true where there exist extensive post-termination procedures, as provided by Act 1 under review in the instant case. When a civil service employee is entitled to a full evidentiary hearing after termination, and retroactive relief such as reinstatement is available, pre-termination due process is satisfied by notice and an opportunity to respond. *Lange*, 56 So.3d at 931 (citing *Haughton Elevator Div. v. State, Through Div. of Administration*, 367 So.2d 1161, 1165 (La. 1979)). "[O]nly the *barest* of a pre-termination procedure is required when an elaborate post-termination procedure is provided." *Id.* (citing *Dep't of Public Safety and Corr. v. Savoie*, 569 So.2d 139, 142 (La. 1st Cir. 1990)) (emphasis in original). Act 1 provided extensive post-termination proceedings sufficient to ensure due process. Act 1 provided that the teacher may request within seven days a full evidentiary hearing

before a teacher tenure panel, before which she may present witnesses, building an evidentiary record for her case. The teacher tenure hearing may be public or private, and the panel has subpoena power to compel witnesses to appear before it. Thereafter, if the teacher is unsatisfied with the panel's recommendation and the superintendent's action after receiving the panel's recommendation, she may seek expedited judicial review of her case, at which the district court must determine whether the superintendent's action in terminating employment was arbitrary or capricious.

The court of appeal, as does the plaintiff, finds no confidence in the independence of the hearing panel given that two of the tenure hearing panel members are appointed by the superintendent who made the decision to terminate and the principal who first brought the charges to the attention of the superintendent. The statute provides that, within seven days after dismissal, a teacher may request and upon request shall be granted a hearing by a panel composed of a designee of the superintendent, a designee of the principal, and a designee of the teacher. La. Rev. Stat. 17:443(B)(1)(as amended by Act 1 of 2012). To protect the independence of the panel, the statute forbids designation of a family member or "any full time employee of the school system by which the teacher was employed who is under the supervision of the person making the designation." *Id.* The statute continues:

> Such hearing may be private or public, at the option of the teacher, and shall begin within seven business days after receipt of the teacher's request for such hearing. The teacher shall have the right to appear before the tenure hearing panel with witnesses on his behalf and with counsel of his selection, all of whom shall be heard by the panel at the hearing. For the purpose of conducting hearings hereunder, the panel shall have the power to issue subpoenas to compel the attendance of all witnesses.

14

As the trial court explained, to question the motives and fairness of the panel members based solely upon who designates their appointment, as the court of appeal here did, invites rank speculation and presumes bad faith where none has been demonstrated or even suggested. "A party challenging the constitutionality of an administrative adjudication on the grounds of bias or prejudice of the decision-maker must overcome the strong presumption of honesty and integrity in those serving as adjudicators [and] must present convincing evidence that the combination of functions in the same individual poses such a risk of actual or substantial bias or judgment that the practice must be forbidden if the guarantee of due process is to be preserved." *Hall v. State ex rel. Dept. of Public Safety and Corrections*, 98-0726, p. 10 (La. App. 1 Cir. 4/1/99), 729 So.2d 772, 778 (citing *Butler v. Dept. of Public Safety and Corrections*, 609 So.2d 790, 793 (La. 1992)) (emphasis in original). We see no reason to facially invalidate a presumed constitutional statute on the basis of speculation about the fairness of the individual members of the tenure hearing panel.

The court of appeal also found a deficiency in the statute because there was no independent decision-maker above and beyond the authority of the superintendent. The court of appeal noted the panel can submit only a recommendation to the superintendent after the hearing, which recommendation the superintendent is not mandated to follow. The court of appeal noted the superintendent need not reinstate a teacher even if the hearing panel has recommended reinstatement, leaving the teacher's fate in the hands of only the superintendent. While the teacher can seek judicial review, the court of appeal observed, the trial court can reverse the decision of the superintendent only if it was arbitrary or capricious. The court of appeal believed it impossible for a teacher

15

to be reinstated once the superintendent has decided to terminate a teacher without a full hearing.

We do not find the post-termination procedures set forth in Act 1 of 2012 to be either meaningless or lacking in sufficient due process protections. Although the plaintiff suggests the superintendent is effectively both the prosecutor and the adjudicator, which we have said may violate an individual's due process rights, *see Allen v. Louisiana State Bd. of Dentistry*, 543 So.2d 908 (La. 1989), such a situation is not presented in the procedures set forth in Act 1. There is no suggestion in these procedures that the superintendent operates as the prosecutor before the hearing panel. Moreover, while the superintendent is not bound to follow the considered recommendation of a majority of the hearing panel, the superintendent's decision is judicially reviewable under Act 1. The statute provides, if the superintendent chooses not to reinstate the teacher following the recommendation of the panel, the superintendent shall notify the teacher of his final determination, in writing, and the teacher may, within sixty days thereof, petition a court of competent jurisdiction to review whether the action of the superintendent was arbitrary or capricious. La. Rev. Stat. 17:443(B)(2) (as amended by Act 1 of 2012).

**CONCLUSION**

After *de novo* review, we conclude the court of appeal erred in declaring La. Rev. Stat. 17:443(B) as amended by Act 1 of 2012 unconstitutional on its face. La. Rev. Stat. 17:443(B) as amended by Act 1 of 2012 provides for one pre-termination opportunity to respond to the charges and two post-termination hearings: the first being a full evidentiary hearing before a tenure hearing panel, which then makes a recommendation to the superintendent, and the second being

judicial review in the district court. If the district court determines the superintendent's decision to terminate or not reinstate the teacher's employment was arbitrary or capricious, the teacher shall be entitled to reinstatement and full back pay. Given these protections, we find Act 1 of 2012 provided sufficient due process to the tenured teacher.

## DECREE

Accordingly, the declaration of unconstitutionality from the court of appeal is reversed, and the matter is remanded to that court for consideration of the plaintiff's as-applied challenge.

**REVERSED AND REMANDED**

06/30/15

SUPREME COURT OF LOUISIANA

NO. 2015-CA-0432

KASHA LAPOINTE

VERSUS

VERMILION PARISH SCHOOL BOARD, ET AL.

ON APPEAL
FROM THE COURT OF APPEAL, THIRD CIRCUIT,
PARISH OF VERMILION

Hughes, J., dissenting.

Aside from the merits of this particular termination, which are not before us, I must respectfully dissent. Due process after the fact is an oxymoron. Post-termination review is not quite so meaningful when there is no pay check to support it. Hopefully, the 2014 changes to the law will work better.