NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-713

KASHA LAPOINTE

VERSUS

VERMILION PARISH SCHOOL BOARD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 98078
HONORABLE JULES DAVIS EDWARDS, III, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Billy Howard Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.

AFFIRMED.

**Calvin Eugene Woodruff, Jr.**
**Cooper & Woodruff**
**220 S. Jefferson St. 3rd Floor**
**Abbeville, LA 70510**
**(337) 898-5777**
**COUNSEL FOR DEFENDANT-APPELLEE:**
     **Vermilion Parish School Board**

**Brian Francis Blackwell**
**Blackwell & Associates**
**8322 One Calais Avenue**
**Baton Rouge, LA 70809**
**(225) 769-2462**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
     **Kasha Lapointe**

**PERRET, Judge.**

Kasha LaPointe ("Ms. LaPointe") appeals the district court's judgment affirming her termination as a tenured teacher with the Vermilion Parish School Board ("VPSB or the Board"). For the following reasons, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. LaPointe was employed, at all times relevant, as a tenured public school teacher at Cecil Picard Elementary School by VPSB. By a letter dated August 16, 2013, the VPSB Superintendent, Mr. Jerome Puyau ("Mr. Puyau" or "Superintendent"), notified Ms. LaPointe that a due process hearing would be held on August 20, 2013, to address charges of "willful neglect of duty" and "dishonesty." This hearing was postponed until August 22, 2013. Those charges in the letter were as follows:

1. Willful neglect of duty:
   a) After being placed on electronic sign-in status from March 20 to May 29, 2013, you were tardy on forty (40) out of forty-five (45) work days.
   b) On August 8, 2013, you failed to attend the entirety of the in-service training at Abbeville High School.
2. Dishonesty:
   a) On August 8, 2013, you were not present at the commencement of the in-service and engaged another employee to sign your name to the roster.
   b) When questioned about the events of August 8, 2013 by your Principal and Assistant Superintendent, you initially denied having another employee sign in for you. When confronted with the evidence that this employee had admitted signing you in, you recanted and admitted the allegation.
   c) You initially denied being absent for any of the in-service sessions on August 8, 2013. When confronted with evidence that a Supervisor had found you absent, you again recanted and admitted

that you had left the in-service training after the first session and did not return.

   d) You failed to notify your Principal that you had left the in-service and failed to enter your absence into the AESOP system.

Following the due process hearing held on August 22, 2013, in which Ms. LaPointe denied the allegations in the due process letter, Mr. Puyau advised Ms. LaPointe of her termination, again by a letter, on September 9, 2013. That letter also advised that she could apply for a tenure review panel, which she did.

A tenure review panel pursuant to Act 1 convened on September 23, 2013, but was disbanded and reconvened on October 8, 2013. At the tenure hearing, both parties submitted additional evidence and testimony to support and deny the allegations in the due process letter. Additionally, Ms. LaPointe presented evidence and testimony of her satisfactory performance rated by her other principals, as well as the Collective Bargaining Agreement (CBA) between the Board and its employees, which requires rules to be published and available to all employees, permits certain tardiness and absences, governs recordation of teacher arrival and departure from school, and governs documentation of reprimands. Ms. LaPointe also presented testimony to support the belief that Ms. Gaspard, the principal, was picking on her. The Tenure Panel, by a vote of two to one, concurred with the Mr. Puyau's decision to terminate Ms. LaPointe. By letter dated October 11, 2013, Mr. Puyau advised Ms. LaPointe that he was confirming her termination.

Ms. LaPointe filed two petitions on December 10, 2013: a "Petition for Judicial Review Pursuant to LSA-R.S. 17:443(B)(2)" and a "Petition for Declaratory and Injunctive Relief," which challenged the constitutionality of La.R.S. 17:443 as amended by 2012 La. Acts No. 1, § 3.

2

The trial court first heard and ruled on the Petition for Declaratory and Injunctive Relief, finding Act 1 of 2012 both facially constitutional and constitutional as applied to the facts. This court reversed. *LaPointe v. Vermilion Par. Sch. Bd.*, 14-919 (La.App. 3 Cir. 2/4/15), 158 So.3d 257. The supreme court ultimately ruled that the statute was facially constitutional and remanded to the third circuit to determine whether the statute was constitutional as applied in this case. *LaPointe v. Vermilion Par. Sch. Bd.*, 15-0432 (La. 6/30/15), 173 So.3d 1152. On remand, this court in *LaPointe v. Vermilion Parish School Board*, 14-919 (La.App. 3 Cir. 11/4/15), 177 So.3d 799, determined Ms. LaPointe was not, in reality, raising an as-applied constitutional challenge to Act 1 of 2012, but instead was challenging the VPSB's implementation of Act 1. Thus, this court affirmed the judgment of the trial court finding La.R.S. 17:443 as amended by Act 1 of 2012 constitutional, as-applied. However, this court also remanded the case for further proceedings in the consolidated, and still pending, Petition for Judicial Review, which concerned whether the Superintendent's decision to terminate Ms. LaPointe was supported by the evidence, and whether the Superintendent's acts were arbitrary and capricious.

On remand, the trial court held an additional hearing on October 31, 2016, on Ms. LaPointe's Rule for Judicial Review of Teacher's Termination Proceedings. The court asked whether either party had additional evidence that was presented at the Tenure Hearing but not in the court's record for review. The parties advised there was no additional evidence. The parties also decided not to present any argument on the matter.

After reviewing the record, the trial court "adopted its prior decision concerning the Petition for Declaratory and Injunctive Relief Seeking a Judicial

3

Review of Teacher's Termination Proceedings filed on behalf of KASHA LAPOINTE, specifically that the Court finds that the termination of plaintiff, KASHA LAPOINTE, was lawful." This court notes that the petition recognized and named by the trial court was two separate petitions, and only the Declaratory and Injunctive Relief had been disposed of at this point. Additionally, based on the record, it appears the only pleading with a corresponding judgment prior to this date was the Petition for Declaratory and Injunctive Relief. In fact, the trial court's previous judgment, which apparently is now adopted by the trial court, entitled "Reasons for Judgment" dated April 17, 2014, specifically states:

> The Petition for Judicial Review will be heard on a future date and on that date this court will determine the following:
>
> - Whether there is a rational basis for the superintendent's decision to terminate LaPointe's employment;
> - Whether the decision to terminate is supported by substantial evidence; and,
> - Whether the acts of the superintendent were arbitrary and capricious?

Although the trial court did not, in fact, have a hearing on the Petition for Judicial Review prior to the hearing on October 31, 2016, nor did it render a judgment on this issue prior to this date, the Judgment on Rules is clear that the trial court found Ms. LaPointe's termination to be "lawful."

## ISSUES FOR REVIEW

The issues this court must decide can be summed up as follows:

1. whether the trial court erred in determining the Superintendent's decision to terminate Ms. LaPointe was not arbitrary and capricious;

2. whether the trial court erred in determining that the Superintendent's refusal to reinstate Ms. LaPointe following the tenure hearing was not arbitrary and capricious; and

3. if the trial court did err in the above, whether Ms. LaPointe is entitled to be reinstated in her employment and awarded full pay for loss of time and salary.

## STANDARD OF REVIEW:

In 2013, La.R.S 17:443(B)(2) (emphasis added), as amended by 2012 La. Acts No. 1, § 3, provided in part:

> If the superintendent does not reinstate the teacher, the superintendent shall notify the teacher of his final determination, in writing, and such teacher may . . . petition a court of competent jurisdiction to review *whether the action of the superintendent was arbitrary or capricious*. The court shall have jurisdiction to affirm or reverse the action of the superintendent in the matter. The record on review shall be limited to evidence presented to the tenure hearing panel . . . .

The supreme court summarized a tenured teacher's relief after a tenure hearing as follows: "if the teacher is unsatisfied with the panel's recommendation and the superintendent's action after receiving the panel's recommendation, she may seek expedited judicial review of her case, at which the district court *must determine whether the superintendent's action in terminating employment was arbitrary or capricious*." *LaPointe*, 173 So.3d at 1161 (emphasis added). Although decided on an earlier version of La.R.S. 17:443, the third circuit in *Holt v. Rapides Parish School Board*, 96-755, p. 1 (La.App. 3 Cir. 12/11/96), 685 So.2d 501, 502, explained the standard of review, which is applicable in this case based on the supreme court's statement in *LaPointe*:

> The standard of review of a school board's action to be applied by this court is whether the board's action is supported by substantial evidence, or is conversely, an arbitrary decision and thus an abuse of discretion. We are mindful that this court must neither substitute its judgment for the judgment of the School Board nor interfere with the Board's *bona fide* exercise of discretion.

5

"Generally, 'capriciously' has been defined as a conclusion . . . when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated competent evidence. The word 'arbitrary' implies a disregard of evidence or of the proper weight thereof." *Coliseum Square Ass'n v. City of New Orleans*, 544 So.2d 351, 360 (La.1989).

## LAW AND DISCUSSION:

Assignments of error one and two both consider whether the Superintendent's decision to terminate Ms. LaPointe was arbitrary and capricious; assignment of error one considers his initial decision, and assignment of error two considers his decision to affirm the termination following the tenure hearing. There appears to be no transcript of the due process hearing prior to the Superintendent's initial decision in the record. However, based on the evidence in the record regarding Ms. LaPointe's behavior, including the testimony at the tenure hearing, we find the Superintendent's decision was not arbitrary and capricious for the following reasons.

The due process hearing notice alleged Ms. LaPointe was being considered for termination for two main reasons: tardiness (willful neglect of duty) and dishonesty. Ms. LaPointe was allegedly tardy to school on numerous occasions, and was allegedly tardy to, and left early from, an in-service meeting. The dishonesty allegations stem from Ms. LaPointe failing to admit or report that she had another teacher sign her in for the in-service meeting, left the in-service meeting early, and failed to report her absence in any way.

"Willful neglect of duty" was explained in *Rubin v. Lafayette Parish School Board*, 93-473, pp. 15-16 (La.App. 3 Cir. 12/14/94), 649 So.2d 1003, 1015, *writ denied*, 95-0845 (La. 5/12/95), 654 So.2d 351 (quoting Black's Law Dictionary,

6

Sixth Edition) as being the "'intentional disregard of a plain or manifest duty . . . .'" Additionally, the fourth circuit has stated that:

> [a] teacher is deemed to have some knowledge that his actions were contrary to school policy. This knowledge may be gained through warnings from [a supervisor] or from general knowledge concerning the responsibilities and conduct of teachers. Jurisprudence collected by the *Coleman* [*v. Orleans Parish School Board*, 94-0737 (La.App. 4 Cir. 2/5/97), 688 So.2d 1312, *writ denied*, 97-0622 (La. 4/25/97), 692 So.2d 1087] court led it to conclude that teachers may be dismissed for willful neglect of duty only for a specific action or failure to act that is in contravention of a direct order or identifiable school policy.

*Chapital v. Orleans Par. Sch. Bd.*, 00-0646, p. 18 (La.App. 4 Cir. 2/7/01), 780 So.2d 1110, 1120-21, *writ denied*, 01-0658 (La. 4/27/01), 791 So.2d 637.

The principal of Cecil Picard Elementary School, Ms. Paulette Gaspard ("Ms. Gaspard"), testified that she noticed Ms. LaPointe, on at least two occasions, signed in with an earlier time than she arrived, and that she was also tardy. Ms. Gaspard testified she highlighted the names of those teachers who had not signed in as of 7:52 a.m., then saw Ms. LaPointe walking onto campus. Ms. LaPointe then wrote her sign-in time as 7:51 a.m.[1] Therefore, on March 19, 2013, Ms. Gaspard issued an incident report to Ms. LaPointe, reprimanding her and placing her on electronic sign-in. Thereafter, Ms. LaPointe was documented as being habitually late. Although Ms. LaPointe testified the electronic sign-in took several minutes to complete, knowing this, she did nothing to ensure she would be stamped "on time," despite testifying that her placement on electronic sign-in was a "wake up call." Additionally, Ms. Gaspard even testified that she allowed Ms.

---

[1] Ms. LaPointe's testimony regarding this incident was that she arrived at school to find Ms. Gaspard highlighting the sign-in sheet. She testified she waited for Ms. Gaspard to finish, then looked at the clock and signed in at 7:51 a.m.

LaPointe a few extra minutes, which would account for any time discrepancies between the school clock and the Central Office clock, which time stamps the electronic sign-in, or issues in accessing the computer to sign in. But even doing so, Ms. LaPointe was late.

Ms. LaPointe argues that the CBA allows teachers to be late once per semester, and requires written reprimand be given to a teacher who is habitually tardy. However, in this case Ms. Gaspard testified Ms. LaPointe was late at least twice prior to being reprimanded, and was dishonest about the time she arrived, so Ms. LaPointe was in fact given a written reprimand on March 19, 2013, after being tardy. Instead, Ms. LaPointe would ask that the principal be required to yet again reprimand her about her tardiness after she was placed on electronic sign-in. The fact of the matter is, Ms. LaPointe was reprimanded once and continued to be tardy. Another reprimand was not required.

Ms. LaPointe also argues that the CBA requires all rules to be published, which she asserts includes placement on electronic sign-in after a reprimand. However, the electronic sign-in was a lesser punishment to Ms. LaPointe's tardiness. It was not a rule, but a way to hopefully overcome a problem that was first reprimanded according to procedure. Requiring electronic sign-in did not change the fact that Ms. LaPointe was required, by a Board policy, to record her daily arrival time.

Additionally, Ms. LaPointe admitted to being tardy at an in-service session. Regardless of the reason why, Ms. LaPointe did not inform a supervisor that she was late for an excused reason until she was caught and confronted by Ms. Gaspard and the Superintendent.

8

Ms. LaPointe suggests this case is similar to *Lewing v. De Soto Parish School Board*, 113 So.2d 462 (La.1959), in which a teacher was terminated for tardiness and the supreme court reversed the termination. However, in *Lewing*, the teacher was not previously reprimanded or made aware that she was tardy. Additionally, the supreme court in *Lewing* did not state that Ms. Lewing should have been warned that her tardiness could lead to termination. The supreme court only stated: "We believe that plaintiff should have been specifically warned by her superiors and given an opportunity to correct her tardiness. Based on lack of notice and warning to plaintiff, we find that the School Board acted arbitrarily in its decision on Charge No. 1." *Id.*

The case at hand is different. Ms. LaPointe was warned, and the electronic sign-in served as extra notice that Ms. LaPointe was being monitored, as well as an opportunity for her to prove she was arriving timely to school. Ms. LaPointe was habitually tardy and did not make any efforts to ensure that she would be documented as timely, even after a "wake up call." Therefore, the Superintendent was not arbitrary and capricious in finding Ms. LaPointe willfully neglected her duty.

Regarding the allegations of dishonesty, Ms. LaPointe is adamant that she did not intend to lie about leaving the in-service late or about asking another teacher to sign-in for her when the meeting commenced. She asserts the conversation was just a misunderstanding.

The tenure hearing testimony from Ms. Gaspard and the Superintendent was that Ms. LaPointe was asked whether she was present at the August 8, 2013 in-service. It was only at the second meeting, after being confronted with testimony that another teacher admitted to signing in Ms. LaPointe and testimony from other

9

teachers that they did not see Ms. LaPointe present, that she admitted she asked to be signed in and needed to leave the in-service early due to illness.

Additionally, Ms. LaPointe explained that, because she was ill, she used the restroom several times while present at the in-service on August 8, 2013, and even described which restroom she used. However, the Superintendent testified he reviewed video of the hallway to that restroom and that the video did not show Ms. LaPointe going to, or coming from, the restroom during the time she asserts she was present. Furthermore, Ms. LaPointe has no justification for why she did not report the partial absence in the AESOP system (the system used to request leave or take time off), or notify a supervisor of her partial absence, despite the fact she testified that was her typical protocol for reporting an absence. Again, we find the Superintendent was not arbitrarily and capricious in finding Ms. LaPointe was dishonest.

Lastly, Ms. LaPointe alleges that the Superintendent's decision was arbitrary and capricious because he failed to implement a lesser punishment in conformity with the VPSB's progressive discipline policy. Again, Ms. LaPointe was not only reprimanded, but placed on electronic sign-in in an effort to curb her tardiness. The superintendent similarly testified:

> Q. Is it your opinion that anything less than termination would have been insufficient to cause Ms. LaPointe to change her conduct in such a way as to make her future conduct acceptable?
>
> A. I think that was done through the digital sign-in progress and working with her to try to change that to get her . . . . And if it would have been - - after they put her on digital if three or four tardies and then it was termination, I would say that was a little too strict. But we gave her every opportunity throughout the entire year.

10

Ms. LaPointe was given a chance to prove her timeliness through the electronic sign-in and given two opportunities to come forward regarding her dishonesty. Based on the record, we cannot say that the Superintendent was arbitrary and capricious in Ms. LaPointe's termination.

Because we affirm the trial court's judgment, there is no need to discuss Ms. LaPointe's assignment of error three.

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed. All costs of this appeal are assessed to Appellant, Ms. LaPointe.

**AFFIRMED.**
THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.